## MAYOR AND CITY COUNTIL OF BALTIMORE *v.* FLORENCE SMITH

[No. 51, January Term, 1935.]

*Decided April 3, 1935.*

The cause was argued before BOND, C. J., URNER, PARKE, SLOAN, SHEHAN, and JOHNSON, JJ.

*M. Henry Goldstone* and *J. Francis Ireton, Assistant City Solicitors,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellant.

*Avrum K. Rifman,* with whom was *David L. Morrison* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore, a municipal corporation, owns and operates the Baltimore City Hospital, a public charity for the sick. Florence Smith, a practical nurse, was there employed for a reward. While engaged on January 10th, 1932, in putting clean linen on the bed of a patient, she scratched her left hand on a spring of the mattress. The finger became infected from the injury, and she had a painful period of total disability that extended from the happening of the accident to May 23rd, 1932. The treatment required multiple incisions of her hand, and the amputation of the index finger, so that she has sustained a permanent partial disability of her left hand to the extent of from two-thirds to three-fourths of its use. The nurse was paid her monthly stipend from the time of the accident to the resumption of her duties at the hospital, and so her claim for compensation is for the resulting permanent partial disability, should she be within the purview of article 101 of the Code of Public General Laws, as amended (Workmen's Compensation Act). Her claim was denied by the State Industrial Accident Commission, but was allowed on her appeal to the Baltimore City Court, from whose reversal of the order of the commission the municipality has appealed.

There can be no question that the injury was accidental and arose out of the claimant's employment, and in its course, but the employer resists the claim on the threefold objection that, within the contemplation of the statute, (a) the employment was not extra-hazardous; (b) the employee was not a workman; (c) and the municipality was not an employer. The validity of these objections depends upon the effect to be given to section 35 of the act, as amended (Code Pub. Gen. Laws Supp. 1929, art. 101), which provides: "35. Whenever the State, county, city or any municipality shall engage in any extra-hazardous work, within the meaning of this Article, whether for pecuniary gain or otherwise, in which workmen are employed for wages, this Article shall be applicable thereto. * * * Whenever and so long as by State Law, City Charter or Municipal Ordinance, provision equal or better than that given under the terms of this Article is made for municipal employees injured in the course of employment, such employees shall not be entitled to the benefits of this Article."

It will be observed that, in the section quoted, the Legislature uses the terms "work" and "employment" as synonymous, and that the only extra-hazardous work or employment which is within the scope of the enactment is when it is extra-hazardous within the meaning of article 101, but regardless of whether the body politic is engaged in the work or employment for pecuniary gain or otherwise. Section 65, subds. (1) and (4), Code Pub. Gen. Laws 1924, as modified by section 35. The fundamental inquiry, therefore, is whether or not a municipal charitable hospital, in which nurses are employed for a reward, is an extra-hazardous work or employment within the meaning of the statute. The answer to this inquiry depends upon the construction of the language of those sections of the act which relate to the questions stated.

Section 32 of article 101, as amended (Code Pub. Gen. Laws, Supp. 1929), provides that compensation under the article shall be payable for injuries received or death sustained by employees engaged in specified employments,

which are designated by the enactment as extra-hazardous. The enumeration embraces some forty-five paragraphs and this last one: "(46) In addition to the employments set out in the preceding paragraphs, this Article is intended to apply to all extra-hazardous employments not specifically enumerated herein, and to all work of an extra-hazardous nature." In section 65, which is devoted to the definition of crucial terms of the legislation, the construction of the term "extra-hazardous employment" is declared to mean a work of occupation described in section 32. So extra-hazardous employment and work may be said, and are so considered throughout the statute, to be synonymous, because both imply the relation of master and servant in reference to work or occupation of a hazardous nature as defined by the statute.

Nursing is not an occupation included within any of the first forty-five paragraphs of section 32, and therefore, if it comes within the scope of the law, nursing must be within the meaning of the general wording of paragraph 46. The plain intention of this last paragraph is to bring within the operation of section 32 every employment not before specifically mentioned and all work, on the condition that the unenumerated employment and the work be of an extra-hazardous nature.

The employments listed in the first forty-five paragraphs were not selected with reference to a definite degree of danger involved in the work or occupation of the workman, since they range from subaqueous or caisson construction to musicians at hotels, and so the varied employments included furnish no uniform test or measure of hazard. It is therefore clear that some occupations are within the act by legislative mandate and not because of their inherent danger. Disregarding those employments which are clearly not hazardous, but which the Legislature has plainly included as a matter of policy, the remaining enumerated employments must be examined to ascertain the criteria by which a work or employment is declared to be extra-hazardous. Since the degree of hazard is not determinative of inclusion, the hazard in

the mind of the Legislature must be inherent in the industry listed.

These particular works or employments may be roughly classified as falling within one of the following divisions of employment: First, the construction, repair, or operation of public utilities and water borne vessels, and their accessory equipment, shops, plants, or shipyards, and warehouses or other places of storage, docks, or warehouses: second, construction work of various kinds and types, and its installation and operation: third, mining, lumbering, quarrying, and other methods of production of raw material, its preparation for use, and its manufacture for the purposes of trade, commerce, and consumption: fourth, packing, canning, and preparation of food supplies: fifth, operation of designated vehicles and machinery: and, sixth, manual, mechanical, and industrial arts. While this classification is general and approximate, it serves to illustrate the nature of the employments which the Legislature intended to be embraced by the act, and thereby to indicate, by the employments which are included, the type of employment which is excluded as not being hazardous. It is but reasonable to assume that paragraph 46 did not mean to enlarge the act beyond those employments and work which were of the same general nature as those which in the preceding paragraphs had been declared to be extra-hazardous. The construction of the last paragraph must be in connection with the cognate prior paragraphs, and, since the first paragraphs are particular and specific and the final paragraph is general in its language, the latter must be confined to things of the same kind and may not be construed to refer to some larger genus. If this were not done, the consequence would be that the last would be without any comprehensible limitation. See *Sutherland on Statutory Construction*, secs. 268, 277: *Endlich on Interpretation of Statutes*. secs. 400, 405-409; *American Ice Company v. Fitzhugh*, 128 Md. 382, 387-389, 97 A. 999.

A consideration of the particular paragraphs discloses that, with the exception of the later additions of a cer-

tain class of salesmen and of musicians and officers of the state police and guards in penal institutions (paragraphs 43, 45, section 32, and section 35 as amended [Code Pub. Gen. Laws, Supp. 1929, sec. 32, pars. 43, 45 and sec. 35]), these paragraphs refer to particular employments in which the employees are workmen, who, in a general sense, are men employed in manual or industrial labor as artificers, mechanics, artisans, operators of machinery, and laborers, and so the hazards of the employment or work within the meaning of the statute are those incident to the labor of the manual or industrial servant while working in his trade, craft, art, or occupation, as contradistinguished from those employments in which the servants are engaged in clerical or professional work. In short, unless otherwise specifically provided, the act applies to employment in an industrial enterprise. *Harris v. Baltimore,* 151 Md. 11, 16, 17, 133 A. 888; *Europe v. Addison Amusements, Inc.,* 231 N. Y. 105, 131 N. E. 750: *Beasman & Co. v. Butler,* 133 Md. 382, 386, 387, 105 A. 409.

It is obvious that a hospital is not an industrial enterprise, and that a trained nurse, whether classified as pupil, practical, or registered, is, in the course of her vocational employment, a professional, and not a manual or industrial, worker. This conclusion is in harmony with common usage of the terms. If nurses in municipal hospitals are to be brought within the statute, it must be by legislative amendment, as was done when bill posters, certain classes of salesmen and musicians, and officers of the state police force, and all guards employed by the penal institutions of the State, were included. Acts of 1924, ch. 583, 1929, ch. 331, 1927, ch. 395: *Harris v. Baltimore,* 151 Md. 11, 22, 133 A 888.

The claimant had entered the Baltimore City Hospital in 1929 as a student nurse to obtain a one year practical nursing course. At the close of this course, she became qualified as a practical nurse, and remained in the service of the municipality at the hospital as a pupil or unregistered practical nurse until the happening of the acci-

dent. Upon her enrollment under the classification adopted by the city as a pupil nurse, she was first paid at the rate of forty dollars a month, which was later advanced to fifty dollars a month. In addition to the money wage, she was supplied with her maintenance at the hospital, where she lived, and, upon her application for registration in the Employee's Retirement System, she was duly classified in group 1, which is exclusively composed of municipal employees who are "clerical, administrative, professional and technical workers engaged in duties requiring principally mental exertion." It is argued that, although a trained practical nurse, she was within the act because the performance of her duties as a nurse required her to scrub and clean tables, chairs, and other articles for use in the wards, and to prepare beds for the patients, and to incur the risk of infections and contagious diseases. The answer to this is that the manual labor mentioned is simply incidental to the profession of nursing and does not destroy its principal and essential quality, which is the special and professional knowledge, technical skill, and experience that comes from the instruction, training, and exercise of the nurse's mental faculties. Nor does the chance of infection and of disease convert a practical nurse in a hospital into a worker in an industrial enterprise. *Supra:* Code, art. 43, secs. 262-268. There is no analogy between the two employments. See *Harris v. Baltimore,* 151 Md. 11, 23, 133 A. 888; *Lesuer's Case,* 227 Mass. 44, 116 N. E. 483; *Brown v. Conway Electric Light & Power Co.,* 82 N. H. 78, 129 A. 633.

The controlling facts are undisputed, and establish that the claimant was employed as a pupil or practical nurse at the time of her injury, and, for the reasons here stated, was not engaged in an extra-hazardous employment or work within the meaning of the statute, and therefore the jury should have been instructed to that effect. *Harrison v. Central Construction Co.,* 135 Md. 170, 108 A. 874; *Slacum v. Jolley,* 153 Md. 343, 138 A. 244; *Beyer v. Decker,* 159 Md. 289, 150 A. 804.

The prayers offered by the municipality, directing a verdict for the employer, should have been granted, and their refusal is reversible error.

*Judgment reversed, with costs, and case remanded for further proceedings in conformity with this opinion.*