MAYOR AND CITY COUNCIL OF BALTIMORE *v.*
MARTHA A. TRUNK
[No. 6, January Term, 1937.]

*Decided March 17th, 1937.*

The cause was argued before BOND, C. J., URNER, OF-
FUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON,
JJ.

*J. Francis Ireton* and *M. Henry Goldstone, Assistant
City Solicitors,* with whom was *R. E. Lee Marshall, City
Solicitor,* on the brief, for the appellant.

*Avrum K. Rifman,* with whom was *David L. Morrison,*
on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore, a municipal
corporation, owns, operates, and maintains the Balti-
more City Hospital, a public charity, which renders free
medical and hospital service to the poor of the city and
furnishes a home for such as are aged and indigent. In
this institution Paul A. Trunk was employed as head or-
derly from 1929 until his physical condition compelled
him to retire on October 27th, 1933. He was subject to the
orders of the head nurse and those of the superintendent.
His regular work included, when he was not engaged in
the supervision of the other orderlies, cleaning the floors
and walls, taking care of patients, assisting the nurses
in taking temperatures, and doing other personal work in
connection with the patients, and the manual labor of
his position. He would, if required, empty waste baskets,
move beds and lockers, and do the heavy work on the
wards and in the corridors and the general office clean-
ing, except scrubbing.

While so employed and during a period of his service,
he, with another employee, was engaged in moving a
heavy steel locker, when the door of the locker flew open
and struck his back below the right shoulder blade and
near the spinal column. There is expert testimony to the
effect that his death some fifteen months later was caused
by a malignant lung condition which had developed as a
consequence of the blow so inflicted. The employee's wife
is his sole dependent, and she filed a claim for compensa-

tion under article 101, section 35, of the Code (1935). The State Industrial Accident Commission first allowed, and then on a rehearing disallowed, the claim. On an appeal, the commission was reversed, and from its order the employer has appealed.

There can be no controversy that the injury suffered was accidental and was sustained in the course of his employment. This much is patent and is not disputed. Three questions, however, are raised by the action of the court on the prayers. It is not enough that the injury be accidental and be suffered in the course of the servant's employment by his master, since for the award of compensation the statute further requires, as defined and contemplated by its terms, a workman, an employer and an extra-hazardous employment. The contention is made that the husband of the claimant was an orderly, who was the head orderly of his group, at a wage of $1,200 a year, payable in installments of $50 every half month, and, so, was not a workman for wages within the meaning of the enactment.

A hospital orderly is primarily a male attendant in a hospital who is charged with the maintenance of order and cleanliness, and of giving menial service and personal attention. If one of the class be placed in a supervisory position with respect to the others of the class, but remains obliged to perform the common services of the class whenever so directed by his employer or whenever an occasion for any of such services to be discharged would arise, he cannot be said to be other than an orderly. It certainly may not be successfully maintained that his position as head orderly will take him out of the operation of the statute, when his duties are servile and not professional, and, particularly, when his injury was sustained in an accident which happened while he was engaged in manual labor within the ordinary duties of an orderly. The testimony is clear that the essential nature and quality of the employment was not affected by his position as head orderly, which differentiated him from the other orderlies in degree but not in kind.

Since a head orderly must be held a workman, the second question is whether or not he was a workman who was engaged in an extra-hazardous employment. The nature of the employment must be determined by the nature of the work or occupation, and where the work or occupation of the employee may be partly hazardous and partly nonhazardous, an injured employee would be regarded as being engaged in an extra-hazardous employment if the injury he received were suffered in connection with the extra-hazardous employment of the employee. *Griffin v. Cruikshank Co.*, 253 N. Y. 303, 171 N. E. 64; *Id.*, 254 N. Y. 505, 173 N. E. 841; *Mulford v. A. S. Pettit & Sons*, 220 N. Y. 540, 116 N. E. 344.

The existing provision of the Workmen's Compensation statute is that: "Whenever the State, county, city or any municipality shall engage in any extra-hazardous work, within the meaning of this Article, whether for pecuniary gain or otherwise, in which workmen are employed for wages, this Article shall be applicable thereto." Code, section 35 of article 101.

The further enactment that the officers of the Maryland State Police Force and the guards employed by the penal institutions of the state shall be deemed workmen for wages within the meaning of the section does not affect the problem at bar, nor is there any contention that the city is taken out of the operation of the act because it has made equal or better provision for its municipal employees than is given by the Workmen's Compensation statute. So, which of the many forms of work in which the workmen of a municipality may be employed for wages are extra-hazardous within the purview of the law must be ascertained by reference to the definition of that term by the statute. In section 65, subdivision (1) of the article, the term "extra-hazardous employment" is declared to mean a work or occupation described in section 32, which is composed of forty-six subdivisions. The concluding or forty-sixth subdivision declares that, in addition to the employments theretofore listed, the "Article is intended to apply to all extra-hazardous employments

not specifically enumerated herein, and to all work of an extra-hazardous nature."

The method to be employed in the determination of the meaning of this forty-sixth subdivision and of what are the essentials for an employment to be embraced within its scope has been considered by this court in former decisions. In *Beasman & Co. v. Butler* (1918) 133 Md. 382, 387, 105 A. 409, the claimant was not brought within the specific classes of employments which had been listed in section 35 as extra-hazardous, but, since the work of clearing land of timber is analogous to the close- ly related work of lumbering, which is one of the speci- fied extra-hazardous works, the court held that the ques- tion of the extra-hazardous nature of the claimant's em- ployment should be submitted to the jury for its de- termination. See *Wheeler v. Rhoten* (1923) 144 Md. 10, 123 A. 572; *American Ice Co. v. Fitzhugh*, 128 Md. 382, 387-389, 97 A. 999. The appeal of *Harris v. Baltimore*, 151 Md. 11, 14-18, 133 A. 888, recognized that a munici- pality was charged with the performance of many func- tions, which, in turn, involved the necessity for various forms of employment. So, in the course of an opinion which stated the reasons for the decision that a park policeman who is employed by the Park Board of Balti- more City is an officer, and not a "workman em- ployed for wages" within the meaning of Code, art. 101, sec. 35, it was made clear that the question was not whether the entire business of maintaining the park by the municipality was extra-hazardous but whether the particular work which the decedent was called upon to perform was an extra-hazardous employment within the meaning of the section. The distinction is observed in the concluding paragraph of section 14 of article 101, which states: "If an employer, besides employing work- men in extra-hazardous employment within the meaning of this article shall also employ workmen in employ- ments not extra-hazardous, the provisions of this article shall apply only to the extra-hazardous employments with- in the meaning of this article and the workmen employed

therein." *See Griffin v. Cruikshank Co.* (1930) 253 N. Y. 303, 171 N. E. 64.

In *Baltimore v. Smith,* 168 Md. 458, 177 A. 903, 905, it was held that a nurse, who was employed by the municipality in a public hospital which was owned and conducted by the municipality for charitable purposes, and who had sustained an injury while at work in the hospital during the course of her employment, was not entitled to compensation, because a public charitable hospital is not an industrial enterprise nor is a trained nurse, in the course of her vocational employment, a workman within the contemplation of the statute. As was pointed out in that opinion, after a review and discussion of the related sections of the law, "these paragraphs refer to particular employments in which the employees are workmen, who, in a general sense, are men employed in manual or industrial labor as artificers, mechanics, artisans, operators of machinery, and laborers, and so the hazards of the employment or work within the meaning of the statute are those incident to the labor of the manual or industrial servant while working in his trade, craft, art, or occupation as contradistinguished from those employments in which the servants are engaged in clerical or professional work. In short, unless otherwise specifically provided, the act applies to employment in an industrial enterprise. *Harris v. Baltimore,* 151 Md. 11, 16, 17, 133 A. 888; *Europe v. Addison Amusements, Inc.,* 231 N. Y. 105, 131 N. E. 750; *Beasman & Co. v. Butler,* 133 Md. 382, 386, 387, 105 A. 409. It is obvious that a hospital is not an industrial enterprise, and that a trained nurse, whether classified as pupil, practical, or registered, is, in the course of her vocational employment, a professional, and not a manual or industrial, worker."

In the appeal at bar, the charitable hospital, as such, was not an industrial enterprise nor specifically declared to be an extra-hazardous employment by the language of the law, and so an employee of the hospital, if injured within the scope and course of his employment, would not be entitled to compensation merely because he was

an employee, as would be the case if the hospital were either an industrial enterprise or definitely included in the operation of the Compensation Law. *Boteler v. Gardiner-Buick Co.,* 164 Md. 478, 481, 165 A. 611. Hence, if the husband of the claimant on this record would have been entitled to compensation, it is because the particular work in the hospital of the claimant's husband is "work of an extra-hazardous nature."

Neither the duties of an orderly in a hospital nor those of the claimant's husband as described in the testimony are the usual work of men employed in manual or industrial labor as artificers, mechanics, artisans, operators of machinery, and workmen. Nor, whatever may be the hazard or exposure to harm and danger which may inhere in the work of the husband of the claimant, it was not one of those associated with work in any of the classes of hazardous employments enumerated in the forty-five subsections of section 32. The workmen employed by the municipality must be engaged in extra-hazardous work within the definition of article 101 before the benefits of the Workmen's Compensation Law may be obtained. Since the work of an orderly in a hospital is neither expressly named as an extra-hazardous work nor included by fair implication in any of the categories of affected employments, the court may not supply the omitted class by an arbitrary construction, but must enforce the statute according to its terms.

The compensation statutes differ so greatly in their scope that their construction in other jurisdictions affords slight aid on the present inquiry, but the court is not aware of any decision which, when read in the light of the particular statute under consideration, is in conflict with the conclusion reached. Compare *Bernstein v. Beth Israel Hospital* (1923) 236 N. Y. 268, 140 N. E. 694; Workmen's Compensation Act (N. Y. Consol. Laws, ch. 67) (Interne) ; *East St. Louis Board of Education v. Industrial Commn.,* 298 Ill. 61, 131 N. E. 123 (janitor in school) Workmen's Compensation Act, sec. 3, subsec. 8 (Hurd's Rev. St. 1919, ch. 48, sec. 128, subsec. 8; secs.

42

126-152i) ; ch. 55a, sec. 1; *Hahnemann Hospital v. Industrial Board* (1918) 282 Ill. 316, 118 N. E. 767 (chief engineer) ; 71 *C. J.* sec. 74, note 81 (a), pp. 360, 362.

Other questions were raised and discussed but need not be considered, since the work of the head orderly in the municipal hospital has been found not to be of the hazardous nature contemplated by the law.

The conclusion reached on this point makes it reversible error for the court not to have granted the prayer offered by the municipality, instructing the jury that their verdict should be for the municipality on the ground that the decedent was not engaged in work of an extrahazardous nature within the meaning of the Workmen's Compensation Law.

*Judgment reversed, with costs to the appellant.*