### VIRGIE STOUT *v.* BALTIMORE LIFE INSURANCE COMPANY

[No. 57, October Term, 1937.]

*Decided December 10th, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*George Ross Veazey* and *Edward Azrael*, with whom was *D. Sylvan Friedman* on the brief, for the appellant.

*William L. Marbury, Jr.,* and *Julian de Bruyn Kops, Jr.,* with whom were *Marbury, Gosnell & Williams* on the brief, for the appellees.

JOHNSON, J., delivered the opinion of the Court.

John L. Stout had for some time prior to his decease represented the Baltimore Life Insurance Company as an industrial life insurance agent, under a contract in writing between him and the company. He was assigned a certain territory in Baltimore City in which to work, and his duties consisted in collecting weekly payments on industrial policies or certificates from persons within that territory who had previously been accepted by his employer as members, and also, in connection with making such premium collections, to canvass for prospective mem-

bers. When he had induced a prospect to take a policy with his company, such person signed an application therefor, and this was by the agent turned in to the main office of the employer at Charles and Saratoga Streets, Baltimore. However, no policy was issued until the applicant had been examined by a physician and accepted by the company as a policy-holder, but such steps were taken promptly, and in all instances where the prospects were accepted, the company issued the policies and delivered them to Stout, the agent, in time for him to make deliveries on his next weekly visit in that part of his territory. His compensation was a certain percentage of his collections, plus a reserve or special salary which varied according to the volume of new business secured by him and the lapses chargeable against him. For this work he was licensed by the State Insurance Department to act as agent for the employer, in accordance with sections 60 and 61 of article 48A of the Code (Supp. 1935).

On August 25th, 1936, while engaged in the performance of his duties, he was struck and killed by a Baltimore & Ohio Railroad train at the Mt. Winan's crossing in Baltimore City, while stopping to make an entry upon a card, evidently being so engaged in his duties as to forget the train's approach.

Virgie Stout, his dependent widow, filed a claim for compensation with the State Industrial Accident Commission against his employer, the Baltimore Life Insurance Company, and its insurer, Travelers Insurance Company. The matter came on for hearing, and the State Industrial Accident Commission found that Stout, the deceased, was not at the time of his death engaged in an extra-hazardous employment within the meaning of the Workmen's Compensation Act, and accordingly disallowed the claim thus filed by his widow. From that finding, Mrs. Stout, the claimant, thereupon entered an appeal to the Superior Court of Baltimore City, and the cause subsequently came to trial before the court and jury upon the same issue considered by the commission, viz.:

Whether Stout, the employee of the Baltimore Life Insurance Company, was engaged in an extra-hazardous employment at the time of his decease. At the conclusion of the claimant's case, the employer and its insurer offered three prayers, which were granted by the court, the first of which instructed the jury to answer the issue "no," because of a legal insufficiency of evidence to show that Stout was engaged in an extra-hazardous employment, and the second, to answer the issue "no," because there was no evidence legally sufficient to show that the deceased at the time of his death was a salesman employed to solicit orders from customers outside of the employer's establishment, while the third instructed the jury that the uncontradicted evidence showed the duties of Stout as an employee of the Baltimore Life Insurance Company were not such as to engage him in an extra-hazardous employment, so as to entitle him or his dependents to claim compensation for disability or death, resulting from accidental injury sustained by him and arising out of his employment, and the decision of the State Industrial Accident Commission must be affirmed.

During the trial it was stipulated by counsel for the parties that the deceased was employed by the Baltimore Life Insurance Company and met his death as a result of an accidental injury on August 25th, 1936, while in the course and scope of his employment and duties, also that his average weekly wage was $17.98; hence the one exception contained in the record relates to the court's rulings upon the prayers. There being no dispute as to the facts, the correctness of the court's instructions must on this appeal depend upon the construction to be placed upon section 32, article 101, of the Code (Supp. 1935), in which are enumerated certain employments which the Legislature has declared to be extra-hazardous and therefore compensable. An examination of the section and its subsections is sufficient to demonstrate that, if such employment is extra-hazardous, this must be by virtue of the provisions of subsections (43) and (46), which are as follows:

"(43) All salesmen including sales managers employed to solicit orders from customers outside of the establishment for which they are employed, who are citizens or residents of this State, employed by a person, firm, or corporation having a place of business within this State, whether the injury for which compensation is asked was sustained within this State or elsewhere. Provided, however, if an employee or the dependents of an employee shall have received compensation or damages under the laws of any other State, nothing herein contained shall be construed so as to permit a total compensation for the same injury greater than is provided for in this Article. * * *

"(46) In addition to the employments set out in the preceding paragraphs, this Article is intended to apply to all extra-hazardous employments not specifically enumerated herein, and to all work of an extra-hazardous nature."

The recent decision of this court in *Baltimore v. Smith*, 168 Md. 458, 177 A. 903, 905, is, we think, a complete answer to any contention that Stout's employment may be regarded as extra-hazardous in nature under the subsection last quoted. In speaking for this court, Judge Parke there said:

"It is but reasonable to assume that paragraph 46 did not mean to enlarge the act beyond those employments and work which were of the same general nature as those which in the preceding paragraphs had been declared to be extra-hazardous. The construction of the last paragraph must be in connection with the cognate prior paragraphs, and, since the first paragraphs are particular and specific and the final paragraph is general in its language, the latter must be confined to things of the same kind and may not be construed to refer to some larger genus. If this were not done, the consequence would be that the last would be without any comprehensible limitation. See *Sutherland on Statutory Construction*, secs. 268, 277; *Endlich on Interpretation of*

*Statutes,* secs. 400, 405-409; *American Ice Co. v. Fitz-hugh,* 128 Md. 382, 387-389, 97 A. 999.

"A consideration of the particular paragraphs discloses that, with the exception of the later additions of a certain class of salesmen and of musicians and officers of the state police and guards in penal institutions (paragraphs 43, 45, section 32, and section 35 as amended [Code (Supp. 1929) sec. 32, pars. 43, 45 and section 35]), these paragraphs refer to particular employments in which the employees are workmen, who, in a general sense, are men employed in manual or industrial labor as artificers, mechanics, artisans, operators of machinery and laborers, and so the hazards of the employment or work within the meaning of the statute are those incident to the labor of the manual or industrial servant while working in his trade, craft, art, or occupation as contradistinguished from these employments in which the servants are engaged in clerical or professional work. In short, unless otherwise specifically provided, the act applies to employment in an industrial enterprise. *Harris v. Baltimore,* 151 Md. 11, 16, 17, 133 A. 888; *Europe v. Addison Amusements, Inc.,* 231 N. Y. 105, 131 N. E. 750; *Beasman & Co. v. Butler,* 133 Md. 382, 386, 387, 105 A. 409."

See, also, *Mayor and City Council of Baltimore v. Trunk,* 172 Md. 35, 190 A. 756.

Is the language of subsection (43) above quoted susceptible of the construction that Stout was a "salesman" within its meaning and terms? As this was the principal question considered on appeal to the Superior Court of Baltimore City, a greater part of the evidence found in the record relates to an attempt on the part of claimant to prove that an industrial insurance agent is commonly called a "salesman" and an effort on the part of the appellees to show to the contrary. It is true that the plaintiff offered evidence from which it could have been found that one holding a position similar to that which Stout held was often referred to as an "insurance salesman," but while this short or slang expression is at times

used, by persons familiar with the duties of the agent, as a convenient term to describe him, the difficulty of holding him to be a "salesman" under subsection (43) becomes manifest when the nature of his duties in connection with securing insurance is fully considered. The provisions of the Workmen's Compensation Act are to be liberally construed so as to effectuate its purposes, yet it by no means follows that compensation is to be awarded one not engaged in an extra-hazardous employment within its terms. Compensation statutes of other states and decisions construing them are of little aid, because of the dissimilarity existing between their provisions and those of the subsection under consideration. But to adopt appellant's contention and hold that Stout was a "salesman" within its provisions would require a further holding that those who were insured as a result of his efforts were "customers" of his employer, and that the latter, instead of maintaining a main office for the transaction of its business, conducted it from an "establishment," a term peculiar to a commercial house engaged in the sale and distribution of tangible goods. Moreover, it would scarcely be contended that the agent's transactions would come within the scope of article 83 of the Code, which deals with Sales and Notices, nor that by reason of the issuance of an insurance policy any title to property had passed, or any property had been sold, for, as stated by Mr. Justice Sutherland, speaking for the Supreme Court in the case of *Tyson & Bro. United Ticket Offices v. Banton*, 273 U. S. 418, at page, 437, 47 S. Ct. 426, 430, 71 L. Ed. 718. "Insurance companies do not sell commodities; they do not sell anything. They are engaged in making contracts with and collecting premiums from a large number of persons, the effect of their activities being to constitute a guaranty against individual loss and to put a large number of individual contributions into a common fund for the purpose of fulfilling the guaranty. In this fund all are interested, not in some vague or sentimental way, but in a very real, practical and definite sense. It was from the foregoing and other considera-

tions peculiar to the insurance business that the court drew its conclusion that the business was clothed with a public interest."

For these reasons we are of the opinion that an industrial insurance agent is not a salesman within the meaning of subsection (43), *supra*, and that the decedent, Stout, was not employed in an extra-hazardous undertaking within the meaning of article 101 of the Code. The judgment appealed from must, therefore, be affirmed.

*Judgment affirmed, with costs to appellee.*