## MAYOR AND CITY COUNCIL OF BALTIMORE *v.* KATE SCHWIND
[No. 42, April Term, 1938.]

*Decided June 14th, 1938.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*J. Francis Ireton* and *M. Henry Goldstone, Assistant City Solicitors,* with whom was *R. E. Lee Marshall, City Solicitor,* on the brief, for the appellant.

*Paul Berman* and *Anthony Purcell,* with whom was *Frank F. J. Daily* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The Mayor and City Council of Baltimore, a municipal corporation, was held by the State Industrial Accident Commission and, on appeal, by the Baltimore City Court,

to be liable to pay compensation to Kate Schwind, sixty-three years old, a janitress in one of the public schools of the municipality, for injuries that have resulted from a paralytic stroke which she alleges was caused by an accident in the course of her daily labor.

On the day of the attack a ladder had been left standing in a hall of the school building on the second story. In some unexplained way the ladder fell, and, in the course of its fall, the upper end struck a transom over a doorway and broke the glass, which fell to the floor. The janitress was at work on the same floor and was not present when this occurred. She later observed what had happened and went downstairs and told the principal, and then saw the janitor in the fire room and informed him, and requested that he move the ladder out of the way so that the teachers could get to the dressing room. She then went upstairs and waited for the janitor, who did not come promptly, and the claimant picked up the ladder, as it was time for the teachers to go into the dressing room, and the fallen ladder was in the way. The claimant described what happened in these words: "I moved the ladder—when I got it up a piece, well it slipped and I wrenched my side. I managed to get it up —I had a pain in the side of my head. I stood there for a little while, started to pick up the glass, and the janitor came up, picked the ladder up, took it on the third floor, came down, helped to pick up the glass. By the time it was all cleaned the principal came up, asked where the ladder was, I said it was carried on the third floor, she turned around and went downstairs, I waited a few minutes. I went in, finished the glass and was on my second class (*sic*), went over and closed the window and I lost the use of my left leg. I waited a little while and went over near the door, and sent for one of the teachers * * * and told her I had hurt my left side. I didn't know what was wrong." The claimant continued at work for about twenty minutes, when she lost the use of her whole left side, but she did not lose consciousness, and, after some delay, she was put upon a stretcher and taken

home.  She had never moved the ladder before, and her explanation of why she attempted to do so was that she wanted to get everything cleaned up and the teachers could not get into the dressing room with the ladder barring the way.  *Moller Motor Car Co. v. Unger,* 166 Md. 198, 170 A. 777.

Although this testimony is contradicted in many of its material facts, it must be accepted by the court as true in the determination of the question whether as a matter of law the claimant is entitled to compensation. So, on the assumption that the facts are as stated, and that the testimony of the medical experts is also correct, that the paralysis of the claimant might have been the direct result of the fact that the lifting of the ladder raised her blood pressure beyond "the point that her hardening arteries would stand it and she suddenly had a rupture," the points to be decided are whether, at the time of the happening of the injury: (a) the claimant was a workman; and (b) the municipality was an employer within the meaning of article 101 of the Code; and (c) the injury was accidental within the meaning of the article; and, finally, (d) the employment was extra-hazardous within the inclusion of the article.

The municipality concedes the claimant was a work-man.  *Baltimore v. Trunk,* 172 Md. 35, 190 A. 756. Every one of the remaining three essentials of the right to compensation is a subject of controversy between the parties.  If the description of the circumstances by the claimant be found to be true, the paralysis which developed as a casual consequence of the rupture of a blood vessel by the claimant, in her unusual effort to lift and place a long and unwieldy ladder, must be accepted as an accidental injury arising out of and in the course of her employment, within the meaning of the statute as defined in the decisions.  *Geipe v. Collett,* 172 Md. 165, 190 A. 836; *Ross v. Smith,* 169 Md. 86, 179 A. 173; *State Roads Commission v. Reynolds,* 164 Md. 539, 165 A. 475; *Schemmel v. T. B. Gatch & Sons Co.,* 164 Md. 671, 166 A. 39; *Waddell George's Creek Coal Co. v. Chisholm,* 163

Md. 49, 161 A. 276; *Celanese Corp. v. Lease*, 162 Md. 587, 160 A. 801; *Slacum v. Jolley*, 153 Md. 343, 138 A. 244; *Kauffman Const. Co. v. Griffith*, 154 Md. 55, 139 A. 548; *Jackson v. Ferree*, 173 Md. 400, 196 A. 107. It was an untoward event which she neither expected nor intended. The unforeseen mishap took place in the course of her employment as janitress. Her duties required her to clean up the classrooms, the restaurant, with its kitchen, which was conducted in connection with the school, to wash transoms, with the help of a five foot ladder, to keep the toilet clean and to scrub the floors on hands and knees, and, generally, to do the common work of a janitress. It was while she was so engaged that she found it necessary, on account of the delay of the janitor in coming to do the work, and the immediate need of the women teachers to go to the dressing room, to act in the emergency thus created by attempting to raise the ladder and put it out of the way. Although this was not strictly within the ordinary duties of her service, yet this sphere must be determined upon a general survey of the nature of the employment, its conditions, obligations and incidents. She was hired to keep the premises fit for use, and, although the fall of the ladder, and its breaking the glass of the transom and scattering the fragments on the floor, were an unusual occurrence, it was unquestionably her work to remove the glass and get the room in condition for use, and it was in natural and reasonable connection with the proper performance of this work for the janitress to move the ladder, and the court cannot say as a matter of law that her act was in any way inconsistent with her continuing within her employment. The act was not done for the servant's purpose, but her conduct was on her master's account, and as janitress, and any peril which she thereby encountered, even if in consequence of her negligence or carelessness, if directly or indirectly involved by her contract of service, would be an incident of and within the scope of her employment. At the time of the accident, the claimant had hardening of the arteries and her

physical condition was not good. Although the paralysis might not have happened if it had not been for her physical condition, yet this does not bar compensation, as there are facts and circumstances which tend to prove that she was not made ill or sustained the paralysis from natural causes, but that the paralysis was the result of an unusual and sudden strain or wrench unexpectedly suffered by her in the course and arising out of her employment. *Geipe, Inc. v. Collett,* 172 Md. 165, 168, 169, 190 A. 836; *Standard Gas Equip. Corp. v. Baldwin,* 152 Md. 321, 328, 329, 136 A. 644.

Thus it appears that there was testimony from which, if believed, the jury could find that the employee was a workman, who had suffered an accidental injury which had arisen out of and in the course of her employment. Nor does the court find the municipality is not an employer within the meaning of the Workmen's Compensation Act. The section of article 101 of the Code which relates to this matter was first enacted by chapter 800, section 34, of the Acts of 1914. Its original scope and effect have been enlarged by amendments (Acts of 1922, ch. 303, sec. 35; 1924, ch. 332; 1927, chs. 83 and 395) until now, as section 35 of article 101 of the Code (1935) it has this form:

"Whenever the State, county, city or any municipality shall engage in any extra-hazardous work, within the meaning of this Article, whether for pecuniary gain or otherwise, in which workmen are employed for wages, this Article shall be applicable thereto. The officers of the Maryland State Police Force and all Guards employed by any of the penal institutions of this State shall be deemed workmen for wages within the meaning of this section. Whenever and so long as by State Law, City Charter or Municipal Ordinance, provision equal or better than that given under the terms of this Article is made for municipal employees injured in the course of employment, such employees shall not be entitled to the benefits of this Article."

If, within the meaning of the article, the municipality

should engage in any extra-hazardous work in which workmen are employed for wages, the effect of the conceded fact that the claimant is a workman brings the employee within section 35, since it does not appear "by State Law, City Charter or Municipal Ordinance, provisions equal or better than that given under the terms of this Article is made for municipal employees injured in the course of employment." *Slacum v. Jolley*, 153 Md. 343, 138 A. 244; *Beyer v. Decker*, 159 Md. 289, 150 A. 804; *Aetna Life Insurance Co. v. Bittinger*, 159 Md. 262, 270, 150 A. 713; *Moore v. Clarke*, 171 Md. 39, 48, 187 A. 887; *Baltimore v. Trunk*, 172 Md. 35, 190 A. 756; *Boteler v. Gardiner-Buick Co.*, 164 Md. 478, 481, 165 A. 611; *Harrison v. Construction Co.*, 135 Md. 170, 108 A. 874; *Harris v. Baltimore*, 151 Md. 11, 15-25, 133 A. 888.

The question, therefore, ultimately becomes, Was the municipality engaged in any extra-hazardous work, within the meaning of the Workmen's Compensation Act, in which workmen are employed for wages, where the claimant sustained the injury for which she now claims compensation? The Mayor and City Council of Baltimore owns, maintains, and operates a system of free public schools in Baltimore City, and the maintenance of a public school building and its premises and the teaching of pupils therein are in the performance of a governmental function. *Gold v. Baltimore*, 137 Md. 335, 112 A. 588; *Williams v. Fitzhugh*, 147 Md. 384, 128 A. 137; *Weddle v. School Commissioners of Frederick County*, 94 Md. 334, 51 A. 289; *Baltimore v. Eagers*, 167 Md. 128, 173 A. 56; *Baltimore v. State*, 168 Md. 619, 179 A. 169. The exemption of a municipality from corporate liability in connection with the maintenance and operation of public schools may be modified or ended by statute, and the General Assembly of Maryland has exercised its authority and power in this connection by the legislation embodied in section 35 of Article 101. By this section it has been seen that a municipal corporation is subjected to the operation and liability of an employer whenever it becomes engaged in any extra-hazardous

work within the meaning of Article 101, in which workmen are employed for wages, unless the municipality made equal or better provision for the workmen than are afforded by the terms of Article 101. The court has had occasion to consider and define the meaning of extra-hazardous work, which, as was pointed out *arguendo* in *Harris v. Baltimore,* 151 Md. 11, at page 15, 133 A. 888, in the course of the opinion delivered for the court by Judge Offutt, does not mean that all the work of the particular municipal enterprise or undertaking is extra-hazardous, but that the work or any part of the work in which the municipality is engaged is extra-hazardous. In *Mayor and City Council of Baltimore v. Smith,* 168 Md. 458, 177 A. 903, it is held that a municipal charitable hospital, in which nurses are employed for reward, is not an extra-hazardous work or employment within the meaning of the statute, and that a nurse therein employed was not compensable for an injury sustained while doing her work as nurse in the hospital. One employed by the city as orderly in a charity hospital was declared, in *Mayor and City Council of Baltimore v. Trunk,* 172 Md. 35, 190 A. 756, to be not engaged in an extra-hazardous employment within the meaning of the act, since the work of an orderly is not expressly named in the statute as extra-hazardous, nor included by implication in any of the categories of affected employments, and the hospital not being an industrial enterprise. So here it will be found that none of the conditions erected by the statute are met to entitle the claimant to compensation. The school was an educational institution, and the work of a janitress there employed is not brought by legislative mandate within the purview of the law or found by reasonable inference to be within any of the employments specified by the act. The analogies of the two cases cited are so close as to make these decisions decisive of the point now under consideration.

The court was in error, therefore, in not granting the prayer offered by the municipality, instructing the jury that their verdict should be for the municipality on the

ground that the claimant was not engaged in work of an extra-hazardous nature within the meaning of the Workmen's Compensation Act.

> *Judgment reversed, with costs to the appellant.*