SIMMONS *v*. SMITH ET UX.

[No. 138, October Term, 1952.]

368

*Decided May 15, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Amos I. Meyers* and *Howard E. Friedman* for the appellant.

*C. Orman Manahan* for the appellees.

HAMMOND, J., delivered the opinion of the Court.

The appeal is from a judgment following a directed verdict for the appellees. The question to be decided

is whether the appellant was engaged in extra-hazardous, and thus compensable, employment at the time of the injury suffered by her in 1949. The State Industrial Accident Commission decided that the appellees were not employers, and the appellant was not an employee, within the meaning of the Workmen's Compensation Law. Cornelia Simmons, the appellant, appealed to the Court of Common Pleas of Baltimore City and the case went to trial before a jury. At the conclusion of the whole case, the Court granted the appellees' prayer to instruct the jury that there was no evidence in the case sufficient to show that the order of the Accident Commission was incorrect.

The appellant argued that the judgment should be reversed because (1), there was evidence to go to the jury that the work in which she was employed was extra-hazardous, and (2), the demurrer prayer should not have been granted, because it did not comply with Part 3, Rule 4 of the General Rules of Practice and Procedure, in that it did not state the grounds of the motion.

We thing the appellant cannot succeed on either point. On the first, the facts show that she was employed by the appellees a day or two a week, primarily as a laundress, most of her time being occupied in ironing. The home in which the appellees lived consisted of twelve rooms. Eight were used as a tourist home and the remaining four as private living quarters. Occasionally, when the appellant was not washing or ironing, she would make beds, wash windows, and sweep or use the vacuum cleaner in all parts of the structure. Most of the washing and ironing which the appellant did was of the personal laundry of the appellees, since the linens from the tourist home were sent to a commercial laundry. On the day of the accident, as occasionally happened in the slack season, the appellant suggested that while she was doing the personal laundry of the appellees, she might as well do four sheets and pillow cases which had been used the night before in the tourist home. The washing was done in the basement of the home in an

ordinary electric washing machine. The type of iron used is not revealed in the evidence, but the ironing was done in the kitchen.

The accident occurred when the appellant was ironing. While carrying a pan of boiling starch, she stumbled over a small platform, spilling the starch on her body and suffering severe burns.

We find nothing in the Workmen's Compensation Law as it stood in 1949—and the law at that time was controlling—which would enable the appellant to be classified as an employee and the appellees as employers, or which would permit a finding that the work in which she was engaged was extra-hazardous. The Workmen's Compensation Law in 1949, as now, was codified in Article 101 of the Annotated Code. Section 67 of that Article in the 1947 Cumulative Supplement of the Code, contains a list of definitions. Sub-section (1) defines "extra-hazardous employment" as a work or occupation described in Section 20 of this Article. Sub-section (2) defines "employer", unless otherwise expressly stated, as a person, partnership, association, corporation, . . . employing workmen in extra-hazardous employments. Sub-section (3) defines "employee" as "a person who is engaged in an extra-hazardous employment in the service of an employer, . . ."; and continuing, the section says: "This Article shall not apply to . . . domestic servants, . . ."

Section 20 of Article 101 listed extra-hazardous employments. The only one which could even remotely be said to apply here, is item 39, which classifies as an extra-hazardous employment, "power laundries". Sub-section 46 of Section 20 says: "In addition to the employments set out in the preceeding paragraphs, this Article is intended to apply to all extra-hazardous employments not specifically enumerated herein, and to all work of an extra-hazardous nature."

It is plain that the duties of the appellant as a laundress in a home could not be considered equivalent to those of one working in a power laundry. The decisive question, then, is whether the work the appellant did was extra-

hazardous as a matter of fact. The cases which have been decided by this Court require a conclusion to the contrary.

In the case of *Mayor and C. C. of Baltimore v. Smith,* 168 Md. 458, 177 A. 903, 904, a nurse, while employed at the Baltimore City Hospitals and in performance of her duties, scratched her hand on the spring of a bed while changing the linen. The scratch became infected and later, one finger had to be amputated. The Court, in discussing the problem, says that such an occupation is not included in the extra-hazardous occupations enumerated in the Statute, and if it is to be within the scope of the law, nursing must come within the meaning of sub-section 46. The Court goes on to say: "The employments listed in the first forty-five paragraphs were not selected with reference to a definite degree of danger involved in the work or occupation of the workman, since they range from subaqueous or caisson construction to musicians at hotels, and so the varied employments included furnish no uniform test or measure of hazard. *It is therefore clear that some occupations are within the act by legislative mandate and not because of their inherent danger.* Disregarding those employments which are clearly not hazardous, but which the Legislature has plainly included as a matter of policy, the remaining enumerated employments must be examined to ascertain the criteria by which a work or employment is declared to be extra-hazardous. Since the degree of hazard is not determinative of inclusion, the hazard in the mind of the Legislature must be inherent in the industry listed." (Emphasis supplied). The Court then classifies the hazardous employments into six general types and says: "It is but reasonable to assume that paragraph 46 did not mean to enlarge the act beyond those employments and work which were of the same general nature as those which in the preceding paragraphs had been declared to be extra-hazardous . . . , and, since the first paragraphs are particular and specific and the final paragraph is general in its language, the latter

must be confined to things of the same kind and may not be construed to refer to some larger genus." The Court continues: "In short, unless otherwise specifically provided, the act applies to employment in an industrial enterprise." It concludes by saying that a hospital is not an industrial enterprise nor a work of manual or industrial labor, and if nursing is to be covered, it must be by a legislative amendment. The nurse was denied recovery.

In *Mayor and C. C. of Baltimore v. Trunk,* 172 Md. 35, 190 A. 756, 759, the claimant's husband was chief orderly in Baltimore City Hospitals. His job was to supervise the orderlies, empty baskets, move beds, lockers, and do heavy work in the ward, but no scrubbing. While engaged in his duties, he lifted a heavy locker, the door flew open, hit his back, and he died some fifteen months later from a lung injury, the result of being hit by the locker door. The Court stated that a hospital was not an industrial enterprise nor was it specifically declared by the law to be extra-hazardous, so an employee in a hospital, if injured within the scope and and in the course of employment, would not be entitled to compensation, merely because he was an employee, as he would if the hospital were either an industrial enterprise or definitely included in the operation of the law. Thus, if the husband of the claimant had been entitled to compensation, it would have been because the work in the hospital was extra-hazardous. The Court concludes: "Since the work of an orderly in a hospital is neither expressly named as an extra-hazardous work nor included by fair implication in any of the categories of affected employments, the court may not supply the omitted class by an arbitrary construction, but must enforce the statute according to its terms." Therefore, the claimant was not entitled to recovery.

In *Mayor and C. C. of Baltimore v. Schwind,* 175 Md. 60, 199 A. 853, 857, a janitress at a public school, while picking up a fallen ladder, ruptured a blood vessel which resulted in the loss of use of her left side. The Court,

after discussing the *Trunk* case above, says: ". . . none of the conditions erected by the statute are met to entitle the claimant to compensation. The school was an educational institution, and the work of a janitress there employed is not brought by legislative mandate within the purview of the law or found by reasonable inference to be within any of the employments specified by the act." Therefore, she was denied recovery.

In the case of *Mattes v. Mayor and C. C. of Baltimore,* 180 Md. 579, 26 A. 2d 390, the claimant was a laborer working as a janitor for the City at the airport. The work consisted of sweeping, washing windows, cleaning offices, loading trucks, emptying trash cans, and the like. While emptying a waste container, he injured his back. The Court discusses Article 101, Section 33, of the then Code, which is Section 20 of the 1947 Cumulative Supplement, and states that since it does not include janitors, if he is to recover it must be in connection with other work that is included in Section 33. The fact that the City engages in some extra-hazardous work, with other work not extra-hazardous, does not bring all employees in either work within the benefits of the Act, and as the work of a janitor was not incidental to hazardous work, there could be no recovery.

In *Congressional Country Club v. B. & O. R. Co.,* 194 Md. 533, 71 A. 2d 696, 699, the employees, maids and housemen of a country club, were hit by a train while on the way to work in a bus owned by the employer. The Court went into the question whether those employees were engaged in extra-hazardous work and said: "In the case at bar it is undisputed that the operation of the Club, as such, was not an industrial enterprise and not of an extra-hazardous nature in law or in fact. Likewise, it is clear that the regular duties of maids and a houseman are not extra-hazardous in law or in fact."

It is our view that the cases we have cited control the decision of this case. The appellant was primarily a domestic servant, working for the appellees as individuals. Her work for the tourist home was very occasional

and that work was of the same character as that she performed as a domestic servant. It was not inherently or actually extra-hazardous.

In 1951 the law was amended so as to add to Section 20 of Article 101 a new paragraph, which included a number of employments for the first time designated by the Legislature as extra-hazardous. Included in the list were window cleaners, porters, cooks, waitresses bus boys, and "employees in tourist camps other than office employees in such camps". Thus, the types of work which the appellant was doing at the time of her injury for the tourist home, as this Court said in *Mayor and C. C. of Baltimore v. Smith, supra,* became for the purposes of Article 101 extra-hazardous ". . . by legislative mandate and not because of their inherent danger". This legislative mandate did not issue until after the accident in this case occurred, and cannot help the appellant here. Therefore, since her occupation was not extra-hazardous in fact, she may not recover compensation. We cannot by retroactive construction supply the omitted class as of 1949 but must apply the statute according to its terms as they were then.

We think that the appellees' prayer for a directed verdict was sufficient to meet the requirements of Part 3, Rule 4 of the General Rules of Practice and Procedure. It asked the Court to instruct the jury: ". . . that there is no evidence in this case legally sufficient to prove that decision and order of the State Industrial Accident Commission, dated the 30th day of October, 1949, is incorrect, . . ." The decision and order of the Accident Commission, which was incorporated by reference in the prayer, was that the appellees were not employers, and the appellant was not an employee. The determination of these questions had to be based under the facts of the case on whether or not the work was extra-hazardous. We think the decision of this Court in *Union Mining Co. v. Blank,* 181 Md. 62, 28 A. 2d 568, 570, applies. As Judge Marbury there said for the Court, the prayer objected to ". . . could not mislead the trial

court, nor could this court fail to perceive the grounds upon which the lower court acted." Compare *Slaska v. Idzi*, 186 Md. 530, 532, 47 A. 2d 503; and *Levin v. Cook*, 186 Md. 535, 540, 47 A. 2d 505.

*Judgment affirmed, with costs.*