## MAYOR AND CITY COUNCIL OF BALTIMORE
### *v.* DUKES

[No. 650, September Term, 1966.]

---

64

*Decided November 9, 1967.*

*Motion for reargument filed on December 8, 1967; denied on December 12, 1967 and opinion modified.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES and FINAN, JJ.

*David L. Bowers, Assistant City Solicitor,* with whom were *Joseph Allen, City Solicitor, Delverne A. Dressel* and *Irvin A. Adler, Assistant City Solicitors,* on the brief, for appellant.

*William H. Engelman,* with whom was *Sol C. Berenholtz* on the brief, for appellee.

FINAN, J., delivered the opinion of the Court.

This is an appeal by the Mayor and City Council of Baltimore from the judgment of the Baltimore City Court affirming an order of the Workmen's Compensation Commission in favor of the claimant, Lethonia Dukes, appellee, an employee of Baltimore City Hospitals (an agency of the Mayor and City Council of Baltimore).

The appellee was injured while working in an operating room at the Baltimore City Hospitals on December 10, 1964, having been employed there since November 13, 1962. At the time of her injury, she was a "surgical aide," earning approximately $63.00 per week, having worked in that capacity for approximately a year and a half.

The appellee's duties were to supply the surgeon with surgical instruments as he needed them during an operation. She worked directly in the operating room. The instruments she worked with were removed from a sterilizer and were often hot. There might be sudden outbursts of steam from the sterilizer when the sterilizer was opened. There were machines in the operating room which housed different gases used by the anesthetist and also the Bovey machine for cauterization of bleeders, overhanging lights, and electrical outlets, connected to and used with the various pieces of equipment. Some of the gases used were nitric oxide, fluothane, and penthrane, which had to be handled cautiously. The appellee had to wear special conductive shoes. She also wore a green sterile surgical gown and cap and mask in addition to the conductive shoes. When certain gases were used, wet sheets were placed in the operat-

ing room and her shoes had to be wet. If this were not done, there would be the risk of an explosion.

The appellee is neither a registered nurse nor a practical nurse. She trained one week for the position of "surgical aide;" the course consisted mostly of orientation in the nomenclature of surgical instruments and operating-room procedures. She did not perform any type of patient care or have authority to administer any medication. Her duties required her to be on her feet throughout the course of an operation. She was assigned to an operating room for an eight-hour work period. The appellee was injured when she tripped over a cord leading from the Bovey unit to a patient.

The case was tried before a jury; however, following the conclusion of the testimony, counsel for both parties agreed to withdraw a juror and have the lower court resolve the following issues:

> 1. Was the claimant a workman employed for wages within the meaning of the Workmen's Compensation Law?
>
> 2. Was the claimant engaged in extra-hazardous employment within the meaning of the Workmen's Compensation Law?

Judge Sodaro in a memorandum opinion answered "Yes" to each of the above issues, thus affirming the award of the Workmen's Compensation Commission which had also found in favor of the claimant. This appeal was taken from the judgment of the lower court and the same issues which were before that court are now before us.

i

Section 33 of the Workmen's Compensation Law (Md. Code, Art. 101 (1957)) provides in part:

> "Whenever the State, county, city or any municipality shall engage in any extra-hazardous work, within the meaning of this article, whether for pecuniary gain or otherwise, in which workmen are employed for wages, this article shall be applicable thereto."

The statute therefore establishes a two-fold test to determine its

applicability to a municipal employee; he must be engaged in "extra-hazardous work" and must be a "workman employed for wages."

Appellant places emphasis on the case of *Harris v. Baltimore,* 151 Md. 11, 133 A. 888 (1926), which first interpreted the phrase "workmen employed for wages." In that case a park policeman, who was appointed by the city and had the same authority granted a regular police officer, was struck and killed by an automobile while on duty. The Court held that the park policeman was not a "workman employed for wages," however the rationale of the Court clearly was predicated on the essentially public and governmental function of a police officer as opposed to a "workman" who would normally be employed in the proprietary or non-governmental functions of the municipality. In discussing the character of the officer's occupation, the Court said:

> "He was clothed while on duty with all the powers of the police of Baltimore City, as conservators of the peace, and was permitted by law to exercise a part, and no unimportant part of the sovereignty of the state." *Id.* at 19, 133 A. at 890.

In light of the above-quoted statement, the distinction between *Harris* and the instant case is at once obvious. The appellee not being "clothed in the sovereignty" of the State, was not an officer, as was the policeman. At the time of her injury, she was earning approximately sixty-three dollars weekly. Under these facts the lower court was correct in deciding that the appellee was a workman employed for wages. See also *Baltimore v. Schwind,* 175 Md. 60, 199 A. 853 (1938), where the City at first disputed, but then conceded that a janitress in a public school was a workman for wages, and *Baltimore v. Trunk,* 172 Md. 35, 190 A. 756 (1937), where the Court held an orderly at Baltimore City Hospitals to be a workman for wages although it denied recovery on other grounds.

Nevertheless, appellant further contends that appellee is not included within the normal lexical definition of the term "workman," as defined in *Harris, supra. Harris* stated that in the

popular sense of the word, "workman" is ordinarily used and understood as designating one engaged in some form of manual labor; skilled or unskilled * * *. 151 Md. at 16, 133 A. at 890. Dictionaries usually define "workman" as "a man employed in manual labor, an artificer; mechanic; sometimes, a skilled or accomplished mechanic; artisan. * * *" (Funk & Wagnalls *New Standard Dictionary*, p. 2731). The term "manual" as used in such definitions applies to work where the physical element predominates over the mental element.

The facts in the record of this case convince the Court that appellee, who was required to stand for long hours and assist the surgeon by performing perfunctory tasks, qualified as a "workman employed for wages" under the Act.

### ii

The two cases decided by this Court which bring the instant case into focus, regarding the question of extra-hazardous employment, are *Baltimore v. Smith,* 168 Md. 458, 177 A. 903 (1935) and *Baltimore v. Trunk,* 172 Md. 35, 190 A. 756 (1937).

In *Smith* this Court found that a practical nurse injured while working in the same hospital where the claimant in the instant case was working was not engaged in hazardous employment within the meaning of the statute and in *Trunk* this Court held that an orderly working in the same hospital was not engaged in extra-hazardous employment. Judge Parke wrote the opinion for the Court in both cases and carried into *Trunk* the analysis developed in *Smith* regarding the intention of the Legislature in providing compensation for death sustained or injuries received while a workman was engaged in specified employments designated by the statute as extra hazardous. At that time § 32 (now § 21) of the Workmen's Compensation Act devoted forty-five paragraphs to specifically enumerating types and forms of extra-hazardous employment. The Act then, as now, had a general paragraph 46 (now ¶ 50) which provided:

> "In addition to the employments set out in the preceding paragraphs, this article is intended to apply to all extra-hazardous employments not specifically enumerated herein, and to all the work of an extra-hazardous nature."

Neither the profession of nursing nor the occupation of an orderly are found in the first 45 (now 50) paragraphs of § 32 (now § 21).

The Court in *Smith,* in an attempt to clarify the scope of coverage provided by § 32, divided the listed employments contained in the first forty-five paragraphs into six (6) categories —the sixth embracing "manual, mechanical and industrial arts."

Also in *Smith* the Court elucidated upon the meaning of general paragraph 46 (now ¶ 50) stating at p. 462:

> "It is but reasonable to assume that paragraph 46 did not mean to enlarge the act beyond those employments and work which were of the same general nature as those which in the preceding paragraphs had been declared to be extra-hazardous. The construction of the last paragraph must be in connection with the cognate prior paragraphs, and, since the first paragraphs are particular and specific, and the final paragraph is general in its language, the latter must be confined to things of the same kind and may not be construed to refer to some larger genus. If this were not done, the consequence would be that the list would be without any comprehensible limitation."

In *Smith,* the Court denied recovery, resting its decision on the premise that nursing was a profession and not an occupation included within the statute. Likewise in *Trunk* the Court found that the work of an orderly in a hospital was not expressly named as extra-hazardous in the statute nor was such work "included by fair implication in any of the categories of affected employment," primarily because a hospital as such was not an industrial enterprise nor specifically declared to be extra-hazardous employment by the language of the law.

However, the case at bar is readily distinguishable on the facts from *Smith* and *Trunk.* One cannot equate the work which the claimant was performing as a "surgical aide" with that of a nurse. Her one week's training would hardly qualify her for professional status. It also would be a distortion of her duties to endeavor to mold them into the work performed by an orderly

who, in such capacity, may never have occasion to enter the operating room.

We do find however that it is not inconsistent with the law as laid down in *Smith* and *Trunk* to hold in the present case that the appellee as a "surgical aide" was as a matter of fact engaged in extra-hazardous employment which by "fair implication" is related to the "manual, mechanical and industrial arts," referred to in the sixth category of the specifically enumerated occupations set forth in *Smith*. This is particularly true when one views the escalated interdependence of industrial and medical research and techniques to achieve improvements in medical science since 1935, the year of *Smith*.

As previously stated, the use of the word "manual" as it appears in the sixth category applies to predominantly physical work performed by women as well as men. The duties imposed on the claimant as a "surgical aide" required dexterous response to the commands of her superior, while standing on her feet over an extended period of time, in an area where precautions against potential hazards were the rule.

In *Hart v. Sealtest, Inc.,* 186 Md. 183, 46 A. 2d 293 (1946), a research librarian in an experimental laboratory was denied recovery in a tort action on the ground that her exclusive remedy was under the Workmen's Compensation Law. This Court held that it was not bound by the description of plaintiff's employment as a research librarian, but was to look further to see whether her duties were themselves extra-hazardous or whether they were incidental to the operation of a hazardous enterprise. The Court was of the opinion that anyone engaged in experimentation in a laboratory would be in an extra-hazardous activity and that the librarian's employment was incidental to the performance of the hazardous work and covered by the Act. In the instant case the claimant's work and working conditions were directly hazardous and not indirect as in the *Hart* case; accordingly the application of the extra-hazardous employment classification is more apparent.

The appellee's contention that her case should be decided on its particular facts and not on the strength of a case involving a nurse or an orderly, although each may be a related field of endeavor, is fortified by this Court's decision in *Cox v. Sand-*

*ler's, Inc.,* 209 Md. 193, 120 A. 2d 674 (1956). In that case an employee in a furniture store brought a tort action against his employer for injuries sustained while working on the premises. The lower court granted the employer's (defendant's) motion for a summary judgment on the theory that as a matter of law the plaintiff's employment was inherently hazardous and therefore his exclusive remedy was under the Workmen's Compensation Law. This Court on appeal reversed the lower court, stating at p. 200:

> "We are of the opinion that it is a question of fact whether the work plaintiff was performing at the time of the accident was extra-hazardous, and that it cannot be held as a matter of law that the work was inherently extra-hazardous."

In the court below, Judge Sodaro, sitting without a jury, found as a matter of fact, that the appellee's work was extra-hazardous. We think the evidence was legally sufficient to support his finding.

*Judgment affirmed, with costs.*