Before STATE INDUSTRIAL BOARD, Respondent.

JENNIE W. BAILEY, Claimant, Respondent, *v.* SCHOOL DISTRICT No. 5, TOWN OF LEICESTER, CUYLERVILLE, N. Y., Appellant.

Third Department, January 10, 1923.

Workmen's compensation — school district is employer within Workmen's Compensation Law, § 3, subd. 3 (now § 2, subd. 3) — under Workmen's Compensation Law, § 2, group 43 (now § 3, subd. 1, group 17) employment by school district is covered — compensation may be awarded against school district, though statute then prescribed no means of collection — Workmen's Compensation Law, § 50, subd. 4 (Laws of 1922, chap. 615), is retroactive and claim may be collected thereunder — provision for compensation to public employees is constitutional — janitor of school building killed while engaged in care of children on school grounds — said duties did not relate to " maintenance and care of buildings."

A school district is an employer within the meaning of section 3, subdivision 3 (now section 2, subdivision 3) of the Workmen's Compensation Law defining an employer as one employing workmen in hazardous employment, including the State and a municipal corporation or other political subdivision thereof.

The employment of workmen by a school district is covered by the Workmen's Compensation Law, section 2, group 43 (now section 3, subdivision 1, group 17).

Compensation may be awarded against a school district for injuries suffered by a workman though at that time there was no provision in the Workmen's Compensation Law for the collection of the award, and an award so made may be collected in the manner prescribed by section 50, subdivision 4 (Laws of 1922, chap. 615), which was amended after the injury.

The provision in the Workmen's Compensation Law providing for compensation to public employees is constitutional.

A janitor of a school building is one of the occupations set forth in old group 42 of section 2 of the Workmen's Compensation Law, since in the performance of his duties he is engaged in the " maintenance and care of buildings," but compensation cannot be awarded for his death, which was caused by an explosion of natural gas in a well in the course of construction on the school grounds to which he had gone for the purpose of ascertaining whether or not any of the school children had disobeyed his instructions by descending into the well.

APPEAL by the defendant, School District No. 5, Town of Leicester, Cuylerville, N. Y., from an award of the State 'Industrial Board, made on the 4th day of March, 1922.

*Austin W. Erwin,* for the appellant.

*Charles D. Newton,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, of counsel], for the respondents.

HINMAN, J.:

The Workmen's Compensation Law (§ 3, subd. 3) in September, 1921, the date of the accident (now § 2, subd. 3), defined " employer " as one " employing workmen in hazardous employments, including the State and a municipal corporation or *other political subdivision thereof.*" This clearly includes a school district. Section 2, group 43 (now § 3, subd. 1, group 17), of the same law provided: "Any employment enumerated in the foregoing groups and carried on by the State or a municipal corporation or *other subdivision thereof,* notwithstanding the definition of the term ' employment ' in subdivision five of section three [now two] of this chapter," shall be covered by the Workmen's Compensation Law. Subdivision 5 of section 3 of said law defined " employment " as relating only to employment " in a trade, business or occupation carried on by the employer for pecuniary gain, or in connection therewith." The statute thus distinctly reads out of the law any requirement that the State or a municipal corporation or other political subdivision of the State shall be in " business " in order to permit compensation to employees thereof who are engaged in any of the hazardous employments enumerated in the groups set forth in section 2 (now section 3) of the law. Such was the law at the time of the accident, September 12, 1921. At that time there was no plan in the statute fixing the way a political subdivision like a school district might carry the insurance.

In 1922, by chapter 615 of the laws of that year, when the entire statute was rewritten, section 50, subdivision 4, of the Workmen's Compensation Law was amended to provide as follows: "A county, city, village, town or other *political subdivision* of the State may secure compensation to its employees in accordance with subdivision one or subdivision two of this section. [Insurance with State fund or another insurance carrier.] If it does not do so, such county, city, town, village or *other political subdivision* shall be deemed to have elected to secure compensation pursuant to subdivision three of this section. [Self-insurance.] * * * Whenever compensation is awarded to a claimant for injury to an employee of a self-insuring county, town or political subdivision, other than a city or a village, the treasurer of the county * * *

containing the  *  *  *  political subdivision that employs him, shall, upon presentation of the award, forthwith begin payment of it in accordance with this chapter, using any money of the county available therefor." Further provision is made for borrowing by the county treasurer if no money is available therefor, and for the board of supervisors to levy the amounts necessary to meet the award upon the proper political subdivision. (See, also, former statute, § 35, as added by Laws of 1919, chap. 458.)

I can see no reason for denying compensation to an employee of a school district, if his employment comes within one of the specified groups, solely upon the ground that no machinery had been provided in the statute at the time of the accident for collecting the award. The intention to cover such an employee is clearly shown by the addition of old group 43 of section 2, now group 17 of subdivision 1 of section 3, added to the former statute by Laws of 1916, chapter 622. An award under the old statute left the claimant with a claim against the district which I think we should recognize as valid and enforcible under the present machinery provided in section 50 of the law. To give that section retroactive effect would not be to create a liability which did not previously exist but simply to afford the relief which a previous liability entailed.

No serious question of the constitutional right of the Legislature to make provision for compensation for public employees engaged in carrying on a governmental function, can be raised. The provision of our Constitution (N. Y. Const. art. 1, § 19) providing that the awards paid " shall be held to be a proper charge in the cost of operating the *business* of the employer," cannot be interpreted as having any relation to awards paid to public employees. That was inserted as a permission or right to be afforded to a private employer to offset any claim that his property was being taken without due process. No such claim of unconstitutionality would ever exist on behalf of the State or a political division thereof and no good reason can be urged for interpreting that clause of our State Constitution as meaning a limitation on the otherwise paramount power of the Legislature to allow a compensation claim against the State or any subdivision thereof, which in good morals ought to be allowed if it requires it of the private employer under similar circumstances. This, in substance, is the view which the Court of Appeals has already expressed. (*Munro* v. *State of New York,* 223 N. Y. 208. See, also, *Matter of Ryan* v. *City of New York,* 228 N. Y. 16.)

The next question in this case is whether the claimant's intestate was an employee within one of the specified groups of hazardous employments set forth in the Workmen's Compensation Law.

The sole claim is that claimant's intestate was the janitor of a public school in the town of Leicester and that as such he was engaged in the "maintenance and care of buildings," one of the occupations set forth in old group 42 of section 2, as inserted in said group by Laws of 1917, chapter 705, and continued by Laws of 1918, chapter 634 (now § 3, subd. 1, groups 2, 13). So far as his duties related to "maintenance and care of buildings" he was covered by the statute. His injury arose on the school grounds but not in the school building. He went from the school building to a place about fifty feet therefrom, where the school district was having a well excavated. He had nothing to do with the construction of the well. That was in the charge of another workman, who was doing the excavating. The sole duty of this janitor in going to the well, as found by the State Industrial Board, was "to see whether any of the scholars in said school had disobeyed his instructions by descending into the well." As he looked over the edge of the well for that purpose, the workman therein struck a match to light a cigarette and natural gas in the well exploded, injuring the janitor and causing his death.

The State Industrial Board may have been justified in finding that he was performing his duty within his employment, but we cannot see how it can be said that any duty of his to guard these children from injury at this well was a duty having any relation to the "maintenance and care of buildings." A janitor is not covered except in relation to his duties in the "maintenance and care of buildings." The award has been based upon a finding that he was engaged in the care of children fifty feet away from the only building that was placed in his charge. The well was in the charge of another workman employed by the district. Even if we could say that a well is a building, no well had been built. The men were simply digging a hole preparatory to constructing a well. A "building," as the term is used generally and as we think it was used in former group 42 of section 2 relating to "maintenance and care of buildings," is defined by Webster as follows: "A fabric or edifice, framed or constructed, designed to stand more or less permanently, and covering a space of land, for use as a dwelling, storehouse, factory, shelter for beasts, or some other useful purpose."

The janitor of this school was not engaged in the "maintenance and care of buildings" at the time of his injury, and the award should, therefore, be reversed and the claim dismissed, with costs to appellant against the State Industrial Board.

H. T. KELLOGG, Acting P. J., and VAN KIRK, J., concur; HASBROUCK, J., concurs, with separate opinion; KILEY, J., in the result.

HASBROUCK, J. (concurring):

This is an appeal from an award of the State Industrial Board made to the widow of William Bailey, deceased, for his death.

William Bailey, employed as janitor of school district No. 5, town of Leicester, N. Y., was killed by an accident September 12, 1921. The trustees had employed one Frank Fellers to dig a well on the premises. During the course of the excavation for the well, Bailey walked from the schoolhouse over to the well and while looking into it a workman lighted a cigarette and caused such an explosion of the gas in the well as to blow Bailey into the air. When he fell he hit his head on a saw horse and fractured his skull from which injury he died.

The widow of the deceased has filed a claim under the Workmen's Compensation Law for compensation for his death. The claim is resisted upon several grounds, viz., that conducting a public school is not a business under section 19 of article 1 of the Constitution; that the Workmen's Compensation Law does not contemplate charging liability upon municipal corporations not engaged in an effort for gain or profit; that the accident in which deceased was killed did not arise out of nor in the course of his employment; that the law furnished no machinery by which compensation might be collected from the school district.

Section 19 of article 1 of the State Constitution making provision for injuries and deaths of employees in industrial employments concludes with the following paragraph: " Provided that all moneys paid by an employer to his employees or their legal representatives, by reason of the enactment of any of the laws herein authorized, shall be held to be a proper charge in the cost of operating the *business* of the employer."

It needs no argument of demonstration that where the effort of a political subdivision of a State — and such we must hold a school district to be — (Gen. Corp. Law, § 3, subd. 1; *State* v. *Englewood,* 41 N. J. L. 157) is to furnish free education there is no business against which the expenses of operation may be charged. If running a public school could be held to be a business such business reaps no income nor profit with which to pay any of its obligations.

The attorney for the Industrial Board seems to have based his argument to sustain the award upon certain language used by Judge CARDOZO in *Matter of Ryan* v. *City of New York* (228 N. Y. 18), viz.: " Employees of the State or of a municipal corporation have the protection of the statute if they are engaged in one or more of the enumerated hazardous employments."

The Legislature has no doubt the power to authorize the recognition of claims against the State resting on an equitable or moral

9

basis despite the language of section 19 of article 1 of the Constitution. (*Cole* v. *State of New York*, 102 N. Y. 48.) So, too, it may provide that a municipal corporation which engaged in business may come under the Workmen's Compensation Law.

The language used, however, was obiter and may not have distinct application to the case at bar. We think that the concluding provision of section 19 of article 1 of the Constitution needs no resort to any of the tenets of construction to find its meaning. The ordinary significance of the word " business " is operation or work for gain or livelihood. (*People* v. *Meola*, 193 App. Div. 487; *Goddard* v. *Chaffee*, 84 Mass. 395; *Flint* v. *Stone Tracy Co.*, 220 U. S. 107; *Matter of Jensen* v. *Southern Pacific Co.*, 215 N. Y. 514; *Matter of Post* v. *Burger & Gohlke*, 216 id. 544.)

In the case of *Beeman* v. *Board of Education* (195 App. Div. 357; affd., 231 N. Y. 624) it was distinctly held that " where there is no business upon which such a charge may be made there is no warrant for the statute, and the provisions of section 2 are all to be read in connection with this constitutional proviso."

Section 2 of the former statute, as amended, contains the various groups wherein are enumerated the hazardous employments which are within the coverage of the Workmen's Compensation Law.

Among the provisions of section 3 is subdivision 5 (as amd. by Laws of 1917, chap. 705), which provides: " ' Employment ' includes employment only in a trade, business or occupation carried on * * * for pecuniary gain, or in connection therewith."

It having been held that unless the occupation was carried on for pecuniary gain a claim would not lie under the Workmen's Compensation Law (*Allen* v. *State of New York*, 173 App. Div. 455), the Legislature changed the law by chapter 622 of the Laws of 1916 so as to provide in group 43 of section 2 as follows: "Any employment enumerated in the foregoing groups and carried on by the State or a municipal corporation or other subdivision thereof, notwithstanding the definition of the term ' employment ' in subdivision five of section three of this chapter." (See, also, Laws of 1917, chap. 705, amdg. said § 2, group 43.)

There can be no doubt but that the purpose of this amendment was to bring the State and municipal corporations and subdivisions thereof within the terms of the Workmen's Compensation Law.

Whatever may be the effect thereof on the State and such municipal corporations and subdivisions thereof as may be engaged in business and have and possess incomes against which compensation may be charged under the Constitution it was not within the power of the Legislature in the face of the terms of section 19 of article 1 to charge such compensation against a political subdivision

which was not engaged in business. The maintenance of a free public school is not for a corporate but for a public benefit. (*Maxmilian* v. *Mayor*, 62 N. Y. 160.)

To hold that the people had in mind school districts when the amendment for the relief of workmen was adopted is to force a fantastic construction on language the meaning of which is perfectly obvious.

School districts in the country have an unequal struggle now to furnish free instruction and if to such burden there were added that of insurance or self-insurance against compensation for injured employees it might well be anticipated that that system which the Constitution has so clearly established might be crippled or destroyed. The provision of the Constitution is: " The Legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this State may be educated." (Const. art. 9, § 1.)

It cannot be possible that when the makers of the Constitution of the State specifically granted to the Legislature the duty of providing for the maintenance and support of a system of free common schools they at the same time had in contemplation the conference of a power on such legislative agency to impair or destroy the efficiency and life of such system. (*McCulloch* v. *Maryland*, 4 Wheat. 431; Cooley Const. Lim. [7th ed.] 680, 681.)

At the time of the making of the award herein, paragraph b of subdivision 4 of section 50 of the Workmen's Compensation Law of 1922, being chapter 67 of the Consolidated Laws (Laws of 1922, chap. 615), undertaking to confer power on the board of supervisors to levy a tax upon a school district, had not been passed. The law as it then stood was section 35 of the former Workmen's Compensation Law (as added by Laws of 1919, chap. 458). It provided: " The board of supervisors of each county of the State may provide for the payment of compensation under this chapter to town, village, city and county employees by taxation, which shall be known as the ' taxation system ' of paying such compensation."

It will be seen that no mention is made in section 35 above quoted of the school district as a political subdivision of the State amenable to taxation for the purposes of the Workmen's Compensation Law.

There was, therefore, on March 4, 1922, no legal machinery in existence empowering the board of supervisors to raise money on the property of the alleged employer with which to make compensation. The claim, therefore, must fail.

The award should be reversed, with costs to the appellant.

Award reversed and claim dismissed, with costs against the State Industrial Board.