# WILLIAM CLAUSS *v.* BOARD OF EDUCATION OF ANNE ARUNDEL COUNTY

[No. 21, January Term, 1943.]

*Decided March 17, 1943.*

The cause was argued before SLOAN, DELAPLAINE, COLLINS, MARBURY, and GRASON, JJ.

*Preston A. Pairo,* with whom were *George B. Woelfel* and *J. Calvin Carney* on the brief, for the appellant.

*Emanuel Klawans* and *Carlyle Barton,* with whom was *H. Warren Buckler, Jr.,* on the brief, for the appellee.

MARBURY, J., delivered the opinion of the Court.

The question in this case is whether an employee of the Board of Education of Anne Arundel County, engaged in extra-hazardous work for which he was paid a weekly salary of $30, is entitled to compensation under the Workmen's Compensation Law for accidental personal injury arising out of and in the course of his employment. All of the issues involved were decided in his favor by the Accident Commission. On appeal to the Circuit Court for Anne Arundel County, the case was heard before the court without a jury, and all the issues submitted as between the claimant and the Board of Education, were decided in favor of the claimant except one. That issue was whether the Board of Education of Anne Arundel County was subject to the provisions of the Workmen's Compensation Law. To that issue the court below returned a negative answer. The appeal here is by the claimant from that decision of the court.

The Workmen's Compensation Law in Maryland was first enacted by Chapter 800 of the Acts of 1914. Section 34 of that Act read as follows: "Whenever the State, County, City or any municipality shall engage in any extra-hazardous work within the meaning of this Act in which workmen are employed for wages, this Act shall be applicable thereto. Whenever and so long as by State law, City Charter or Municipal Ordinance, provision equal or better than that given under the terms of this Act is made for municipal employes injured in the course of employment, such employes shall not be entitled to

the benefits of this Act." By Chapter 303 of the Acts of 1922 this section, which had become Section 35 of Article 101 of the Annotated Code, 1924, was amended to insert in the first sentence after the words "within the meaning of this Act" the words "whether for pecuniary gain or otherwise." It was again amended in 1924 by Chapter 332, which inserted a sentence reading as follows: "In time of peace and while engaged in military service all officers and enlisted men of the organized militia of the State of Maryland, shall be deemed *workmen of the State for wages* within the meaning of the preceding sentence." The italics are supplied. In 1927, by Chapter 83, the provision concerning the militia was taken out, and the section left as it had been made by the Act of 1922, Chapter 303. However, by Chapter 395 of the same session of 1927, the section was again repealed and re-enacted by inserting a sentence between the first and last sentences, reading as follows: "The officers of the Maryland State Police Force and all Guards employed by any of the penal institutions of this State *shall be deemed workmen for wages* within the meaning of this Section." Italics supplied. In 1937, by Chapter 288, the officers of the county police of Prince George's County were declared to be "workmen for wages," within the meaning of the Workmen's Compensation Act, and by Chapter 315 of the same session it was enacted that the police of the Town of Laurel should be considered "workmen for wages" under the provisions of Article 101. In 1939, Chapter 317, Section 35, was repealed and re-enacted and the second sentence was amended to include the officers of the Montgomery County police, as well as those of the Maryland State police force and the guards in the penal institutions. All of these were declared to be "workmen for wages." A further amendment made by Chapter 652 of the same session put back the officers and enlisted men of the militia in time of peace, left out the Montgomery County police, and put in the officers of the State police and the guards at

the penal institutions. All of these were declared to be "workmen for wages." Article 101 of the Annotated Code of 1939 codified the various Acts in Section 46 and included among those especially enumerated the officers and men of the militia, the officers and men of the State police, and the Montgomery County and Prince George's County police, the police of the Town of Laurel and all guards employed by any of the penal institutions of the State. All of these were declared to be "workmen for wages" within the meaning of the Article.

By Chapter 433 of the Acts of 1941, Section 46 was again repealed and re-enacted, and as finally drawn included as "workmen for wages" not only those specifically mentioned in the Code section, but also "the regular members of the police force, the paid firemen, the Engineers and Linemen of the Electric Light Plant of Frederick City."

These amendments were probably made to meet an early decision of this court that a park policeman employed by the Board of Park Commissioners of Baltimore City was not a "workman employed for wages." *Harris v. Baltimore*, 151 Md. 11, 25, 133 A. 888. After the passage of the amendment of 1922, including within the scope of the Act officers and enlisted men of the organized militia, this court said that a member of the National Guard was a workman for wages under that amendment, although he did not receive any wages, and we carried out what was held to be the intention of the amendment by working out a theoretical wage for him. *Merrill v. State Military Department*, 152 Md. 474, 136 A. 897. The point is made by the appellee that inasmuch as by the several amendments employees of certain specifically named agencies are covered by the Act, an intention is indicated to exclude the employees of all other State, County and Municipal agencies. This contention is based upon the maxim *expressio unius est exclusio alterius.* It can have no application here because the purpose of the amendments was to designate as "workmen for

wages" certain employees who would not otherwise be so considered. The amendments were concerned with the nature of the employment, and not with the agencies by whom the included classes were employed.

The right of the claimant to compensation must depend upon the decision of the question whether his employment by the Board of Education of Anne Arundel County is an employment by the State or by the county. Clearly, he is not employed by any city or municipality. That leads to an examination of Article 77 of the Code, which is that providing for a system of public education in the State. This Article was passed in substantially its present form by Chapter 506 of the Acts of 1916. There have, of course, been amendments added since. The Act of 1916 was passed as a result of the report of a commission authorized by Chapter 844 of the Acts of 1914. This commission requested the General Education Board to undertake 'a survey of public education in this State. This was done, and a most thorough and exhaustive report was filed, prepared under the direction of Abraham Flexner and Dr. Frank P. Backman. This report was submitted to the Governor, transmitted by him to the Legislature of 1916, and as a result, the present system of education was adopted.

Article 77, as thus enacted, provides for a State Board of Education which is to be at the head of a State Department of Education and to which is entrusted educational matters affecting the State and the general care and supervision of public education. Educational matters affecting counties are under the control of County Boards of Education. The Governor appoints the State Board, and also appoints the County Board. The State Board appoints the State Superintendent of Schools, and the County Board appoints the County Superintendent of Schools, who is the executive officer of the County Board and its secretary and treasurer. The money for the support of the schools in each county is obtained chiefly from the tax levy of the county. Additional

amounts may be obtained from State funds. General control of schools, teachers and the construction of school buildings is placed in the County Boards, subject, however, in various ways to supervision by the State authorities. The whole scheme of the Act is to provide a uniform system of public schools throughout the State which shall provide as nearly as possible the same kind and type of education in each of the counties of the State.

The appellee claims that it is neither a State nor a county, but an independent corporation created by the Legislature, and, therefore, it does not come within the provisions of Section 46. Neither the State nor the county, however, can act directly. Each must act through agencies, and whether such agencies are individuals or unincorporated commissions or corporate bodies, if they are acting within the power and authority given them, they are agencies of the State or county, as the case may be. The State Roads Commission is an unincorporated agency of the State. It has been held to be a *quasi* corporation. *Postal Telegraph Co. v. State Roads Commission*, 127 Md. 243, 96 A. 439; Code, 1939, Art. 89B, Sec. 2. It has been held that it cannot be sued in a tort action. *State v. Rich*, 126 Md. 643, 95 A. 956. Yet, in the case of *State Roads Commission v. Reynolds*, 164 Md. 539, 165 A. 475, an employee of the State Roads Commission was awarded compensation for an accidental injury arising out of the course of his employment. It was not contended by the Commission nor was it considered by this court, except inferentially, that the claimant was not an employee of the State. He must have been held one in order to bring him within the provisions of Section 46 of Article 101, which is the only section which would permit him to have compensation. In a very recent case, an employee of the Upper Potomac River Commission, a corporation created under a special Act of the Legislature, was denied the right to sue the Commission because the Commission, although a corporation, was an agency of the State, and the employee,

therefore, had his remedy under Section 46 of the Workmen's Compensation Law. *Lease v. Upper Potomac River Commission*, 179 Md. 543, 20 A. 2d 498.

A county is not a corporate body, it is a political subdivision of a State. Many of its functions, including the very important one of taxation, are entrusted to the County Commissioners. The County Commissioners have some control over school funds, because they can reduce the budget submitted by the County Board of Education, but their powers in this respect are strictly limited by statute. *Board of Education v. County Commissioners*, 131 Md. 658, 102 A. 1007. Other functions of the county are given to other agencies and boards. An elected Tax Collector or Treasurer generally collects taxes. In many counties there is a Liquor Board which has charge of licenses for the sale of intoxicating liquors. Some counties have special boards for the control of the county police. Some have highway commissions or highway engineers. In others there are sanitary commissions whose duties lie wholly within the county. All of these are agencies of the county for one purpose or another. An employee of any one of them may be an employee of the county.

It is not necessary for the purposes of the present case to determine whether in all cases the Board of Education of Anne Arundel County is an agency of that county. It may, for some purposes, be an agency of the State. This we do not determine. It is clear, however, that part of its duties are to repair school buildings (Article 77, Section 45), and this was the work for which the appellant was employed, and on which he was engaged when injured. In having this work done, the Board of Education was acting as the agent of Anne Arundel County. The title to the county school buildings is in this Board (Section 41), and the funds for the upkeep of such buildings are included in those annually requested from the County Commissioners (Section 56).

The appellee has cited cases from other jurisdictions to the effect that school districts, drainage districts, agricultural colleges and other types of public bodies, are not included in the words "State" or "County" or "City" as these words are employed in their Workmen's Compensation Acts. Such cases are, among others: *Ponca City Board of Education v. Beasely,* 157 Okla. 262, 11 P. 2d 466; *Rusk District v. Industrial Commission,* 186 Wis. 232, 202 N. W. 204; *Alger v. Michigan Agricultural College,* 181 Mich. 559, 148 N. W. 341; *Smith v. State Highway Commission,* 131 Va. 571, 109 S. E. 312. An examination of these cases, however, shows that each of them is based upon the different laws creating the several agencies considered. They are neither authoritative nor persuasive in the case before us. Insofar as they affect the questions raised we are unable to agree with them. There is also authority to the contrary. (71 *C. J.,* Sec. 153; *Dourrieau v. Board of Commissioners,* La. App., 158 So. 581; *Bailey v. School District,* 204 App. Div. 125, 198 N. Y. S. 247; *Larson v. Independent School District,* 53 Idaho 49, 22 P. 2d 299; among others.) But we do not rely upon interpretations by other States of their laws. We base our conclusions upon what we consider the necessary result of a proper interpretation of the Maryland statutes.

Appellee contends, as additional basis for holding Section 46 was not intended to apply to it, that it has no power to make equal or better provision for its employees than is contained in the Workmen's Compensation Act. Its construction of the last sentence of Section 46 is that this sentence limits the application of the entire section to those who can comply with its provisions. In this connection, it may be noted that the wording of the sentence relied on makes it applicable to "municipal employees" only. Unless these words are broadened by necessary implication, they refer to employees of cities or towns and not to those of the State or of the counties. There is another reason, however,

why the appellee's contention in this particular is erroneous. The last sentence of Section 46 is a release from coverage of those employees for whom equal or better provision *has been made*. It is not intended to release those for whom such provision *cannot be made*. The last would be the necessary result of appellee's contention.

The appellee raises a constitutional objection to a construction of Section 46 of Article 101 which requires it to use its funds to pay compensation or to pay premiums for compensation insurance. This point is based upon Section 3 of Article VIII which provides: "The School Fund of the State shall be kept inviolate, and appropriated only to the purposes of education." This contention depends entirely upon what are considered purposes of education. The system in use now is very different from that in use at the time of the adoption of the Constitution. Then, the children of the State were taught in one-room schools, heated by wood stoves which the pupils took turns in keeping supplied with fuel. These pupils came, for the most part, from within walking distance of these schools. With the passage of time, the necessity of teaching more subjects and of having specially trained teachers for such purposes has been recognized. For these reasons, among others, schools have been consolidated, and teachers instruct in single subjects or confine their work to single grades or classes, instead of teaching all of the pupils in any community in all subjects and grades. This has resulted in the building of large consolidated schools, and the transportation of pupils to these schools by buses furnished with county funds. In two recent cases, this court has held that the expenditure of public funds to carry children to parochial schools under certain circumstances is an expenditure for purposes of education within the Constitution. *Board of Education v. Wheat,* 174 Md. 314, 323, 199 A. 628; *Adams v. St. Mary's County,* 180 Md. 550, 26 A. 2d 377. These large consolidated schools are necessarily heated by central heating systems which require daily care and

constant inspection to keep them in working order. The Boards of Education having control over them must provide men to do this work, and that is the particular work which the appellant in this case was doing when he was injured. It is not questioned that he was engaged in extra-hazardous employment, and, therefore, the cases referred to in the briefs and argument which hold that certain city employees were not engaged· in extra-hazardous work have no application. These cases involve a nurse in a city hospital (*Baltimore v. Smith*, 168 Md. 458, 177 A. 903); an orderly in a city hospital (*Baltimore v. Trunk*, 172 Md. 35, 190 A. 756); a janitress in a city public school (*Baltimore v. Schwind*, 175 Md. 60, 61, 199 A. 853); and a janitor at a city airport (*Mattes v. Baltimore*, 180 Md. 579, 26 A. 2d 390).

The meaning of the Constitution is not restricted to the meaning of particular words employed as they were understood at the time of its adoption. It is not to be supposed that the framers of the Constitution of 1867 did not expect the system of education then in force to be changed or improved. They could not, of course, foresee what changes were to come, so they wisely did not attempt to define what they meant by education. They left that to be interpreted in the light of conditions at any given time when such a question should arise. Education in 1867, as we have shown, did not include the employment of repair men for heating systems in public schools. Education in 1943 does include such employment, because that is the only way the kind of schools now found necessary for the education of the children of the State can be made usable.

We have only to go one step farther. The Legislature has said that when a county employs a person in extra-hazardous work, that person must be insured in one of the ways provided by the Workmen's Compensation Act. It follows that the cost of such insurance or the payment of compensation, if the self-insuring method is adopted, is a part of the necessary expense of any

such work engaged in by any county. Such work is a part of modern education. Such use of public school funds is for purposes of education, as now defined, and is not within the constitutional prohibition.

The same reasoning applies to a further contention based upon a decision of this court, in which it was determined that in the absence of any authority to so expend their funds, school boards had no money to use in paying damages to persons injured, and, therefore, they could not be sued in personal actions for damages. In that case, a school child running on a school lot was knocked down and mortally injured by a wire which it was alleged the school authorities permitted to be negligently strung between trees at a dangerous height. *Weddle v. School Commissioners*, 94 Md. 334, 51 A. 289. The answer to this contention has already been made. Section 56 of Article 77, which provides for the preparation and presentation of an itemized and detailed school budget by the County Board of Education to the County Commissioners, states that such budgets shall contain among other things: "The amount of money needed for permanent improvements and repairs, and for current repairs, furniture for old buildings, maintenance and support of the schools during the succeeding school year." This includes the cost of labor to keep the buildings, including the heating systems in repair, the wages of such laborers and taking care of their compensation when injured. While the Legislature has not provided any funds for paying damages recovered in negligence actions by pupils, it has provided by necessary implication, contained in Section 46 of Article 101, funds to take care of compensation of employees who come within the provisions of the Workmen's Compensation Act.

We have discussed the questions raised in the briefs and arguments and considered by the court below in its opinion, because of the importance of the questions involved, not only to the parties, but to the several Boards of Education throughout the State. In so doing, how-

ever, we do not mean to approve the method by which this case came to this court.

In several recent cases of considerable importance, the records have not been so prepared as to bring the questions involved properly before us. We have, in most of these cases, passed upon these questions, but it is a dangerous practice and one which it is desirable to avoid in the future. In the case before us, the appeal seems to be from the verdict of the court. The appellant did not wait until the court had passed an order in accordance with that verdict, as is required by Article 101, Section 70, which states: "If the Court shall determine that the Commission has acted within its powers and has correctly construed the law and facts, the decision of the Commission shall be confirmed; otherwise it shall be reversed or modified." That question was considered by this court in the case of *Federal Tin Co. v. Hoffman,* 164 Md. 131, 165 A. 323, 325. In that case, the verdict included the statement: "The answer of the jury to the issue is 'yes' thereby reversing the ruling of the State Industrial Accident Commission." No judgment was entered on the verdict. This court referred to the earlier case of *Schiller v. B. & O. Railroad,* 137 Md. 235, 112 A. 272, and said: "It is for the court and not the jury to affirm, reverse, or modify the ruling of the commission appealed from." In that case, it was assumed that the docket entry was made by order of court and was intended to embody its judgment. This assumption was made in order to avoid sending the case back and causing unnecessary expense. In the present case, the verdict on the issue appealed from was not really a verdict at all, because the issue was not one of fact. It was a question of law, which, in a jury case, would have been passed on by the court by proper instructions. In a non-jury case, such as this was, under Rule 9, Part III, 1941, of the General Rules of Practice and Procedure of this court, the court should have entered judgment and given reasons. The reasons were given, but the judg-

ment was not entered in proper form, although the answer of the court to the question we have considered must be considered as a determination of the question of law presented. As we find this erroneous, we will enter a judgment affirming the action of the State Industrial Accident Commission.

> *Decision reversed. Judgment entered affirming the decision of the State Industrial Accident Commission. Costs to be paid by the appellee.*