JOSEPH B. HUFFMAN *v.* STATE OF MARYLAND,
EMPLOYER AND STATE ACCIDENT FUND,
INSURER ET AL.

[No. 869, September Term, 1972.]

*Decided August 15, 1973.*

The cause was argued before GILBERT, MENCHINE and SCANLAN, JJ.

*Gerald H. Cooper,* with whom were *Carl E. Tuerk, Jr.,* and *J. Harry Cross* on the brief, for appellant.

*Charles R. Goldsborough, Jr., Special Attorney,* with whom were *Francis B. Burch, Attorney General,* and *J. Howard Holzer, Special Attorney,* on the brief, for appellees State of Maryland and State Accident Fund. *Gerald S. Klein, Assistant City Solicitor,* with whom were *George L. Russell, Jr., City Solicitor for Baltimore City, Ambrose T. Hartman, Deputy City Solicitor,* and *Richard K. Jacobsen, Assistant City Solicitor,* on the brief, for appellee Mayor and City Council of Baltimore.

MENCHINE, J., delivered the opinion of the Court.

This is an appeal by Joseph B. Huffman from a judgment of the Baltimore City Court reversing a decision of the Workmen's Compensation Commission. That judgment

denied appellant workmen's compensation benefits from the State of Maryland, employer, and the State Accident Fund, insurer. Twenty two issues had been submitted to the Commission and twelve to the trial court on appeal. This seeming complexity is more apparent than real, the issues requiring decision here being thus simply and briefly stated:

1.  Is Joseph B. Huffman, a police officer of Baltimore City, entitled to the benefits provided by Article 101, the Workmen's Compensation Law, as an employee of the State of Maryland, employer, and the State Accident Fund, insurer, for permanent total disability sustained while performing his official duties as a police officer of Baltimore City?

    Alternatively:

2.  Is the State Accident Fund estopped to deny compensation benefits to Joseph B. Huffman because of Article 101, §65 in view of its issuance of insurance policy S-100 to the State of Maryland?

    and

3.  Did the Mayor and City Council of Baltimore have standing to prosecute an appeal from the Workmen's Compensation Commission, and does that municipal corporation and its purported collective *alter ego*, Charles B. Benton, Jr., F. Pierce Linaweaver and John A. Luetkemeyer, Jr., have standing to intervene in the proceedings below and to participate in the appeal to this Court?

The conceded facts are these: Joseph B. Huffman, a Baltimore City police officer, on October 3, 1967, was shot while attempting apprehension of a felon. The injury caused permanent total disability. Claim for compensation benefits was made against both the State of Maryland, as employer, and the State Accident Fund, as its insurer, and against the Mayor and City Council of Baltimore, as employer and self-insurer. The Workmen's Compensation Commission

awarded compensation benefits to the claimant against the State of Maryland, employer, and the State Accident Fund, insurer, but disallowed the claim as to the Mayor and City Council of Baltimore.

The State of Maryland, employer, and the State Accident Fund, insurer, entered an appeal to the Baltimore City Court from that decision of the Commission. The Mayor and City Council also appealed. Charles B. Benton, Jr., as Director of Finance; F. Pierce Linaweaver, as Director of Public Works, and John A. Luetkemeyer, Jr., as City Treasurer, acting through the City Solicitor and members of his staff, intervened in the proceedings in the Baltimore City Court. Motions *ne recipiatur* contested both the right of the Mayor and City Council to appeal and the right of the individuals to intervene in the proceedings. Those motions were denied by a judge other than the trial judge to whom the substantive cause was submitted, but are before us as a subsidiary issue.

On appeal from the Commission's decision, the case was submitted to the court, without the aid of a jury. The trial court found as a matter of law that the appellant was not entitled to workmen's compensation because he was not a "workman employed for wages" within the meaning of Article 101, § 33. The trial court also found as a matter of law that § 65 of Article 101, estopping, in certain circumstances, insurance carriers from asserting that employment was excluded from the provisions of Article 101, had no application to one in the claimant's status. The State Accident Fund had issued, on August 31, 1949, its policy of insurance S-100 to the State of Maryland. The trial court held that such policy was not intended to protect and did not protect, members of the Baltimore City Police Department and thus did not bring the claimant within the purview of § 65.

### Entitlement to Benefits as an Employee of the State of Maryland

Article 101, § 33, at the time of claimant's injury, read in pertinent part as follows:

"(a) Whenever the State, county, city or any

municipality shall engage in any extra-hazardous work, within the meaning of this article, whether for pecuniary gain or otherwise, in which workmen are employed for wages, this article shall be applicable thereto.

In time of peace and while engaged in military service all officers and enlisted men of the organized militia of the State of Maryland shall be deemed workmen of the State for wages within the meaning of this section; provided that, whenever and so long as provision equal to or better than that given under the terms of this article is made by the federal government for an employee of the military department of Maryland injured in the course of employment, such employee shall not be entitled to the benefit of this article.

The officers of the Maryland State Police force, the Montgomery County and Prince George's County Police, the police of the Town of Laurel, the police of all other municipal corporations in Prince George's County which are subject to the provisions of Article 11E of the Constitution of Maryland, paid firemen employed by the fire departments of Prince George's County, the regular members of the police force, the paid firemen, the engineers, and linemen of the electric light plant, of Frederick City, the members of the police department and of the fire department of the City of Cumberland, and all guards employed by any penal institutions of this State, shall be deemed workmen for wages within the meaning of this section."

In *Harris v. City of Baltimore*, 151 Md. 11 (1926), 133 A. 888, the workmen's compensation claim of a park policeman employed by Baltimore City, who possessed "the same powers that police in said city have as conservators of the peace," was rejected by the Court of Appeals of Maryland as not covered by Article 101, § 33 (then § 35).

At that time, the first paragraph of the section was in the identical language quoted. At that early date, the only

change grafted upon the section from the time of its passage was the addition of the words "whether for pecuniary gain or otherwise" (Ch. 303, Acts of 1922) and an extension embracing the State militia (Ch. 332, Acts of 1924). The Court of Appeals commented on that circumstance, observing at page 25 [893]:

"It certainly never occurred to the Legislature, when the Act of 1914 was passed, that a policeman, or a fireman, serving the State or a municipality or a member of the state militia, was a 'workman employed for wages' in the sense that an employee in a steel mill, or a coal miner, would be, and the act was not in our opinion intended to apply to employees of the State or a municipality engaged in such occupation. *And it does not appear from any amendment to the original act, or from any source, that the Legislature has ever extended or widened its scope except in the specific instances to which we have referred.* " [Italics supplied]

We are, of course, bound by the decision in *Harris, supra,* unless amendments to Article 101 in the interval between the effective consideration date of that case (June 29, 1925) and the date of the injury sustained by the claimant in this case (October 3, 1967) have altered its weight and effect.

In *Shvanda v. City of Baltimore,* 13 Md. App. 354, 283 A. 2d 181, this Court traced the legislative changes following the decision in *Harris, supra,* from 1925 to 1967, pointing out that thirteen amendments had been added declaring specific groups to be "workmen for wages" within the meaning of § 33. We then said at page 359 [183]:

"We think it evident, both from the holding in *Harris,* as well as from the legislative history of Section 33 that appellant, as a Baltimore City fireman, does not come within the meaning of a workman for wages under Section 33. The clear rationale of *Harris,* as explicated in *Baltimore v. Dukes, supra,* decided in 1967, 'was predicated on

the essentially public and governmental function of a police officer as opposed to a "workman" who would normally be employed in the proprietary or non-governmental functions of the municipality.' At p. 67. Because appellant, as a fireman, was not a conservator of the peace and may not have exercised the sovereign power of the State to the same degree as a policeman, does not mean that the *Harris* holding is not applicable to him. In his opinion Judge Liss held that no substantial distinction existed between the park policeman involved in *Harris* and a fireman acting in the exercise of his essentially public and governmental duties as an agent of the municipality. Judge Liss held that a uniformed fireman did exercise some portion of the sovereign powers of government and, in the sense contemplated by the *Harris* decision, we agree with that conclusion.

We note, moreover, that it was the purpose of the various amendments to Section 33, heretofore delineated, 'to designate as "workmen for wages" certain employees who would not otherwise be so considered.' *Clauss v. Board of Education*, 181 Md. 513, 517-518. In that case, decided in 1943, the court stated at p. 517 that the amendments to Section 33 'were probably made to meet an early decision of this court that a park policeman employed by the Board of Park Commissioners of Baltimore City was not a "workman for wages," ' citing the *Harris* case. Subsequent to *Clauss*, the Legislature continued to amend Section 33 to bring within its coverage designated groups of governmental employees. If firemen or policemen were intended to be embraced within the term 'workmen for wages' under Section 33, then all of the amendments to that Section specially designating various groups of persons for inclusion within its coverage, including some paid firemen, would have been unnecessary."

No legislative change in § 33 of Article 101 followed our decision in *Shvanda, supra.* Ch. 741 of the Acts of 1970 included police officers within the purview of the Workmen's Compensation Law at the same time that other massive coverage changes in Article 101 were effected. Those changes took place after the date of the injury to the present claimant and do not assist his cause here. It is plain that no amendment to § 33 of Article 101 extended to persons in appellant's occupation the benefits accorded by Article 101. We hold that the rule of *Harris, supra,* was controlling at the time of this injury and the appellant is not entitled to workmen's compensation benefits as an employee of the State of Maryland, employer, and the State Accident Fund, insurer.

### *Estoppel of the State Accident Fund to Deny Coverage*

Appellant alternatively urges that the State Accident Fund is estopped to deny him the benefits of the Workmen's Compensation Law by reason of the provisions of Article 101, § 65. He points out that the State Accident Fund on August 31, 1949 issued a policy of Workmen's Compensation Insurance to the State of Maryland. Article 101, § 65 reads as follows:

> "In any proceeding for the enforcement of a claim for compensation under this article on behalf of any employee, if the State Accident Fund or the insurance carrier, as the case may be, has accepted or is entitled to receive from his employer a premium or premiums on compensation insurance (either alone or in connection with other insurance) with respect to such employee, such fund or carrier shall be estopped from asserting, as a defense to such claim, that such employee was a casual employee or was not engaged in an extra-hazardous employment or that the employment is excluded from the provisions of this article or was not carried on for pecuniary gain."

The insurance policy issued by the State Accident Fund (known as Policy S-100) reads as follows:

*"Policy of Insurance*

THE STATE ACCIDENT FUND HEREBY IN-SURES, in consideration of the payment of the premium on this policy as hereinafter provided

*The
Insurance
Provided*

THE STATE OF MARYLAND AND ALL
DEPARTMENTS OF THE GOVERN-
MENT THEREOF

(hereinafter called 'the insured employer') whose principal place of business within the State of Maryland is situated at Annapolis, Maryland, against liability under Chapter 800 of the Acts of 1914 of the General Assembly of Maryland and the amendments thereto, known as the Workmen's Compensation Law;

*Medical
Aid*

INCLUDING the insured employer's liability to furnish medical and other treatment and care of injured employees and officials as required by the Act,

AND ASSURES to all employees and officials of the insured employer the payment of compensation to the persons entitled thereto by virtue of an award of the State Industrial Accident Commission for accidental injuries received or accidental death sustained arising out of and in the course of employment, at the rates and for the amounts subject to the provisions of the Workmen's Compensation Act.

*Employees .
Covered*

The insurance under this policy shall take effect at 12:01 A. M., Eastern Standard Time, on Sept. 1st 1949, provided that the estimated advance deposit for one year's insurance based on the estimated cost of said insurance computed on the number of employees and officials of the insured employer within the State of Maryland shall have been paid by the insured employer to the State Treasurer.

*Premium*

The insurance under this policy shall automatically renew and continue in full force after the expiration of the original one year for succeeding yearly periods when the insured employer shall be liable for the same renewal deposit premium thereon for each succeeding yearly period until the expiration of three years from the effective date hereof, after which the amount of the deposit premium shall be determined in accordance with the accident experience of the said insured employer under this policy for the said three years, following which time the current annual deposit premium based on such redetermination shall be paid by the said insured employer. Thereafter the said deposit premium shall be determined annually from the experience of the entire (all years) period of coverage under this policy. The insured employer may at any time after the expiration of one year from the date hereof withdraw from the State Accident Fund and surrender this policy upon sixty days notice of its intention so to do, and upon paying all arrears of deposit or redetermined premium due the said Fund.

*Renewal of Insurance*

It is understood and agreed that if at any time during the first three years of coverage, and any time between subsequent regular annual adjustment dates for which an advance deposit is due or has been made by the insured employer, the State Accident Fund determines that the 'incurred losses' plus 'administrative costs' are equal to 90% or more of the deposit premium (including any previous balance in favor of the State Accident Fund or in favor of the insured employer) for such current period or year, the insured employer shall be required to make an additional 'interim deposit' in the amount determined and at such time as a written request is made by the State Accident Fund.

*Additional Interim Deposit*

Failure of the State Accident Fund to receive such additional 'interim deposit' from the insured employer within thirty days after such additional deposit has been requested shall constitute cause for suspension of coverage under this policy during the period of such default and until said deposit is received by the State Accident Fund.

*Examination of Payroll Records*

The payroll and employment records of the insured employer shall be open at all times to inspection by the said Commissioners of the State Accident Fund and their authorized employees.

*Construction of Policy*

This policy is to be construed by reference to the Workmen's Compensation Act, as enacted and as heretofore or hereafter amended, which shall in all cases govern as to its construction and meaning.

This policy shall not become effective unless countersigned by the Superintendent of the State Accident Fund, and payment of deposit premium as required is made.

Baltimore, Md.___Aug. 31st___, 1941

COMMISSIONERS OF THE STATE ACCIDENT FUND

Attest:_____(signed)_____

William B. Lebherz, Chairman
(signed)

John P. Stafford, Secretary

Countersigned:

Richard K. Coggins

Superintendent State Accident Fund"

The following endorsement to policy S-100 was made on October 18, 1956, reading as follows:

*"ENDORSEMENT*

It is hereby agreed between the State of Maryland, Board of Public Works of Maryland, and

the Commissioners of the State Accident Fund of Maryland, that the administrative cost of the Workmen's Compensation insurance coverage provided by the State Accident Fund be determined on the basis of 12-1/2% (twelve and one-half percent) of the total incurred losses each year beginning July 1, 1956. Said administrative charge to be subject to review at the end of a three year period to determine whether the 12-1/2% is the proper administration charge to be made.

Also, that it be further agreed that the State Accident Fund shall bill the Board of Public Works annually for a deposit covering the estimate for incurred losses, plus administration expenses, along with an actuarial schedule showing suggested deposits by each of the special funds departments and also an actuarial schedule showing suggested deposits by each of the general funds group.

And, be it further understood and agreed, that this endorsement shall, upon its execution by the authorized representatives of the parties, become a part of the above policy.

STATE OF MARYLAND
BOARD OF PUBLIC WORKS

BY:  Joseph O'C. McCusker

Date: October 10, 1956.    Secretary.

COMMISSIONERS
OF THE STATE
ACCIDENT FUND
OF MARYLAND

BY:  Thomas W. Offutt

Dated: Oct. 18, 1956."

Other endorsements shed no light upon the issue whether the policy was intended by its signatories to have the effect of providing workmen's compensation benefits to members of the Police Department of Baltimore City.

The statutory estoppel created by the provisions of § 65 initially was introduced into the Workmen's Compensation Act by Ch. 477 of the Acts of 1943. The legislation probably developed from a decision of the Court of Appeals in *Keeney v. Beasman,* 169 Md. 582 (1936), 182 A. 566, wherein it was held that the fact of issuance of a policy of workmen's compensation insurance with the acceptance of premiums therefor, furnished no ground for application of the doctrine of estoppel as to a person not within the purview of the Act. As initially enacted the estoppel was effective only when the State Accident Fund or other carrier had accepted from the employer a premium. By Ch. 814 of the Acts of 1957 estoppel was extended where the insurance carrier was "entitled to receive" such a premium.

Insurance policy S-100 necessarily implied that calculation of the premium payable will be governed by the payroll and employment records of the insured employer. This implication is strengthened by the policy provision authorizing the Commissioners of the Fund to inspect such records. The implication arising from the policy itself became explicit under the endorsement of October 18, 1956. That endorsement provided that the State Accident Fund "shall bill the Board of Public Works annually for a deposit covering the estimate for incurred losses along with an actuarial schedule showing suggested deposits by each of the special funds department and also an actuarial schedule showing suggested deposits by each of the general funds group." Further evidence that the premium required to be paid by the State of Maryland to the Fund under policy S-100 was intended to be calculated on State budget payrolls is found in Ch. 7 of the Acts of 1950. (State Budget) There, for the first time in budgetary history appeared the following (p. 197):

"MISCELLANEOUS APPROPRIATION NO. 4

The following appropriation is made from the General Funds of the State:

1 To the Commissioners of the State Accident Fund

for Workmen's Compensation coverage on State
employees"

(p. 198)

"MISCELLANEOUS APPROPRIATIONS NO. 7

The following appropriations are made from the
Special Funds of the State to become available
immediately upon the passage of this budget to
supplement appropriations for the fiscal year 1950
or to provide funds for the payment of obligations
for which appropriations are not already available:

1 To Budget Item No. 702, 'Insurance', in the
following listed State Agencies to provide for said
agencies' share of cost of Workmen's Compensation
coverage:"

(Then follows a list of various State departments.
Significantly it does not include the Police Department of
Baltimore).

Thus it appears that there was a fatal missing link
between policy S-100 and § 65 of Article 101 — the claimant
was not an employee or official of the State of Maryland
within the meaning of the insurance contract with the result
that the State Accident Fund did not accept and is not
entitled to receive a premium from the Police Department of
Baltimore City. Thus, no estoppel arose under § 65.

Appellant ingeniously contends that the legislature forged
that missing link by the passage of Ch. 203 of the Acts of
1966. We do not agree. It is true § 527 of that Chapter
provided that "the Police Department of Baltimore City is
hereby constituted and established as an agency and
instrumentality of the State of Maryland." That language
must be considered in the light of § 533 of that Chapter,
which provided in pertinent part as follows:

"(a) It shall be the responsibility of the
Commissioner to estimate annually the sum of
money which will be necessary for the next ensuing
fiscal year to enable the Department to meet the

obligations and discharge the duties imposed upon it by this subtitle. In preparing such estimate, the Commissioner shall, under procedures established by the Board of Estimates, cooperate with the Director of Finance of the City of Baltimore in the same manner as provided for other municipal agencies of the City of Baltimore by the Charter of Baltimore City (1964 Revision) as amended from time to time. Thereafter, such estimate shall be considered by the Board of Estimates of the City of Baltimore in the preparation of the annual proposed ordinance of estimates in the same manner and subject to the same provisions as for other municipal agencies of the City of Baltimore."

The record shows that the State Accident Fund never received a premium under policy S-100 for workmen's compensation protection to members of the Baltimore City Police Department.

We hold that the policy does not entitle the State Accident Fund to receive such a premium. The payroll of the Police Department was never included within the budget of the State of Maryland, either before or after the passage of Ch. 203 of the Acts of 1966. The plain provisions of the latter act make clear that the Police Department Budget is both determined and implemented by the Mayor and City Council of Baltimore. The City was not signatory to policy S-100, so that the State Accident Fund would have no standing to assert a claim for premiums as to it.

No estoppel under § 65 bars the State Accident Fund from reliance upon the rule of *Harris, supra.* The judgment of the lower court in the substantive case will be affirmed but we are required to pass upon the subsidiary issue in the case.

Standing of the Mayor and City Council of Baltimore; and its Collective Alter Ego, Charles B. Benton, Jr., F. Pierce Linaweaver and John A. Luetkemeyer, Jr.

Early and late in the history of Maryland Law the right to

appeal has been denied to successful litigants. *Ringgold v. Barley*, 5 Md. 186, 195; *Salomon v. Pierson*, 8 Md. 297, 298; *Riley v. Naylor*, 179 Md. 1, 8, 16 A. 2d 857, 860.

The propriety of the petition of Benton, Linaweaver and Luetkemeyer to intervene in the proceedings is suggested as justified by its intention to "permit a challenge to the legality of State impositions upon their political sub-divisions to avoid certain procedural questions arising in litigation between a state and its creation."

The short answer to that contention is that the subject case does not involve "litigation between a state and its creation." It simply is litigation by which a claim to workmen's compensation benefits is asserted by an individual against the State. The motions *ne recipiatur* directed to the appeal of the Mayor and City Council of Baltimore and to the petition of the individuals to intervene should have been granted.

> *Judgment in the substantive case affirmed, but case remanded for entry of an order dismissing the appeal of the Mayor and City Council from the decision of the Workmen's Compensation Commission and striking out the intervention petition, two-thirds of the costs here and below to be paid by the Mayor and City Council of Baltimore and one-third of such costs by the State of Maryland.*